WRIGHT *v*. FIRST NATIONAL BANK OF MONROE.

1. EXECUTORS AND ADMINISTRATORS—BANK AS MORTGAGEE OF HEIRS
   OF INTESTATE—FRAUD—SELF DEALING.
   Mortgage given by some of the heirs interested in their intestate
   father's real estate to broker who assigned it to bank which
   was acting as administrator, in order to pay off outstanding
   encumbrances and pay administration expenses of the estate
   and purchase the interest of one of the parties interested in
   the estate, was not void because alleged act of self dealing
   on part of bank was in violation of its fiduciary duty nor be-
   cause the transaction was either a direct or an indirect
   attempt on the part of the administrator to acquire property
   of the estate of which it was trustee, where there is no
   evidence of fraud or unconscionable conduct on the part of
   defendant either as administrator of the father's estate or as
   owner of the mortgage (3 Comp. Laws 1929, § 15824).

2. SAME—SALE OF REAL ESTATE—MORTGAGES.
   Action of administrator, a bank, in furnishing money to broker
   and obtaining note and mortgage executed by some of the heirs
   interested in intestate's real estate in order to pay off outstand-
   ing encumbrances and purchase remaining interests and pay
   administration expenses did not constitute a violation of the
   statute providing that an administrator should not purchase
   nor be interested in the purchase of decedent's land sold by
   the administrator where plaintiffs, and later broker, had un-
   successfully sought to obtain the funds elsewhere (3 Comp.
   Laws 1929, § 15824).

3. SAME—MORTGAGES—DUTY OF FIDUCIARY—SELF DEALING.
   Transaction whereby defendant bank, an administrator of an
   estate, acquired by assignment a note secured by mortgage
   upon real estate belonging to heirs in decedent's estate was at
   most only voidable and will not be set aside in the absence of
   testimony showing active or constructive fraud or that a
   breach of trust was committed, even if bank were violating
   duty it owed as a fiduciary (3 Comp. Laws 1929, § 15824).

4. USURY—FINANCE CHARGE FOR 7 PER CENT. MORTGAGE.

Mortgagee under 7 per cent. $7,500 mortgage who retained $400 as a finance charge is subject to penalty of loss of interest (2 Comp. Laws 1929, §§ 9239–9241).

5. SAME—MORTGAGES—RIGHT TO LAWFUL INTEREST.

Until the penalty for usury is incurred, a mortgagee has the right to receive and enforce payment of lawful interest on the amount actually owed and may enforce payment thereof by foreclosure (2 Comp. Laws 1929, §§ 9239–9241).

6. SAME—VOLUNTARY PAYMENT.

One who has freely and of his own accord fulfilled a usurious contract cannot have relief or recover the money paid thereon (2 Comp. Laws 1929, §§ 9239–9241).

7. SAME—MORTGAGES—FINANCE CHARGES—OFFER TO DO EQUITY—LAWFUL INTEREST—TAXES.

A court of equity will not afford plaintiffs relief from usurious loan of bank where after mortgage had been in default, even allowing credit for usurious finance charge, plaintiffs made an escrow arrangement with the bank whereby warranty deed was left in escrow in consideration of mortgagor's forbearance to foreclose and acceptance of the property in full settlement of the mortgage debt in case plaintiffs failed to make certain payments of interest and taxes, where plaintiffs failed to make such payments and have not offered to do equity by making payment of amount of loan plus lawful interest and taxes (2 Comp. Laws 1929, §§ 9239–9241).

8. EXECUTORS AND ADMINISTRATORS—USURY—EQUITY—LACHES.

Plaintiffs who waited until December, 1939, before seeking relief in a court of equity from mortgage acquired by bank in April, 1930, which was then administrator of their father's estate and which exacted a usurious finance charge, were barred from relief because of laches where in the interim plaintiffs had made an escrow arrangement amounting to a voluntary payment of the usurious charge and three material witnesses had died (Comp. Laws 1929, §§ 9239–9241, 15824).

Appeal from Monroe; Golden (Clayton C.), J. Submitted January 15, 1941. (Docket No. 59, Calendar No. 41,234.) Decided April 8, 1941.

Bill by Marion L. Wright, Vernon F. Wright, and Nina I. Wright against First National Bank of Monroe and others to set aside a mortgage and deed. Bill dismissed. Plaintiffs appeal. Affirmed.

*Walter M. Nelson* and *Daniel W. Ross,* for plaintiffs.

*Oliver J. Golden* and *William H. Fallon,* for defendants.

CHANDLER, J.    The father of plaintiffs in his lifetime was the owner of a 75-acre farm near Monroe, this State; the father died intestate in 1920 leaving as his heirs at law five children, three of them being the plaintiffs.    One of the children, Burton Wright, sold his interest in the farm to his brother Ernest. Burton predeceased Ernest, who was killed in an accident in 1928.    None of the children were ever married excepting Ernest.    No probate of the father's estate was had and the three unmarried children, the plaintiffs, continued to live on the farm, and Ernest who resided a short distance away did the active farming of the property.

After the death of Ernest, his widow, in conjunction with the probating of her husband's estate, insisted that the father's estate also be probated and that she be paid her share in cash.    Administration was had upon the petition of plaintiff Marion, and defendant bank was appointed administrator of the father's estate and in due course obtained from the Monroe county probate court a license to sell the farm for the purpose of paying debts, expenses of administration, and distribution.

The plaintiffs in the probate proceedings, and in subsequent negotiations, were represented by an attorney, a reputable member of the Monroe county bar.    A petition was filed by the plaintiffs in the probate court to set aside the order granting the license to sell, which was dismissed by the probate judge.    The plaintiffs evidently wanted the widow of Ernest to take her share in property, but no proceedings were ever taken for a partition of the

farm. Ernest died leaving no children. and his widow and the plaintiffs became his sole heirs at law. His interest in the real estate of his father was a two-fifths interest by reason of his having acquired the interest of the deceased brother Burton.

After the license to sell the farm was granted, the defendant, administrator, claimed to have received an offer for the same of $15,000, and the record indicates that the plaintiffs were advised that it was for their best interests to let the farm be sold and the proceeds divided. Plaintiffs, however, decided to acquire ownership of the farm and purchased the same of the administrator for the sum of $15,000. The defendant bank was requested by the plaintiffs to make a loan of $7,500, that being substantially the amount required in cash to pay a mortgage that was then on the farm held by the Dansard State Savings Bank of $1,545.67, back taxes of $841.20, expenses of administration, for quieting title to the land in question, and to pay the widow of Ernest her share in cash for her interest in the real estate and the personal property, which totaled $3,808. The bank declined to do so. The plaintiff Marion testified that she contacted in the neighborhood of 100 people in an effort to obtain a loan on the farm of $7,500, but without success. The defendant referred the plaintiffs to one Carl Kiburtz, a broker, who agreed to obtain the money for plaintiffs. The plaintiffs executed a promissory note to Mr. Kiburtz for the sum of $7,500, bearing interest at the rate of 7 per cent. per annum, payable semiannually, $250 of the principal sum to be due April 19, 1932, and the whole sum to be payable three years after date. The payment of this note was secured by the execution and delivery of a real-estate mortgage covering the 75-acres in question. Kiburtz, being unable to negotiate the sale of the

note and mortgage, assigned the same to the defendant, who furnished the money on April 21, 1930. The plaintiffs in these negotiations were still represented by their attorney, who was a witness to the mortgage in question. It does not appear that the plaintiffs at the time of these negotiations knew that defendant bank furnished the money and took an assignment of the mortgage; however, the record discloses that the bank notified the plaintiffs that it was the owner of the mortgage a few months after the mortgage was given.

No payments were ever made upon the note and mortgage in question after April, 1931, and on April 19, 1932, the plaintiffs were in default on said mortgage both as to interest and principal, and had not paid the taxes assessed against said premises.

In May, 1932, the bank threatened to foreclose the mortgage, and the plaintiffs, in consideration of defendant refraining from so doing, executed a warranty deed to the bank, which was placed in escrow and was to become absolute on April 1, 1933, unless previous to that time the plaintiffs should pay to the escrow agent all interest past due on said mortgage together with the interest due April 1, 1932, and all interest due October 1, 1932, and should deliver proof of payment of all taxes and assessments due and payable on the premises described in the mortgage previous to April 1, 1933. Said escrow agreement further provided: "If said interest as aforesaid and taxes and assessments as aforesaid shall have been paid to the escrow agent before April 1, 1933, the deed affixed to this escrow agreement and deposited with said escrow agent shall be returned to parties of the second part [plaintiffs]; otherwise it shall be delivered to the First National Bank, of Monroe, Michigan, party of the first part, and may be recorded, and all right,

title and interest of parties of the second part to said lands therein described shall pass upon such delivery. In consideration of the above covenants and agreement the First National Bank, of Monroe, Michigan, covenants and agrees to refrain from foreclosure and to accept the covenants placed in escrow of the premises as satisfaction of the mortgage debt."

The plaintiffs failed to comply with the terms of the agreement and said deed was delivered to the bank. On January 12, 1934, the deed was recorded in the office of the register of deeds of Monroe county.

The defendant bank was closed by proclamation of the governor in February, 1933; placed in the hands of a conservator, and during the process of reorganization certain of its assets were placed in the hands of three trustees, amongst which assets was the farm in question, which was deeded by the bank to said trustees on January 10, 1934, by quitclaim deed which was duly recorded. In view of the claim of the plaintiffs that they never knowingly executed the deed to the bank above referred to and did not know that the bank was claiming ownership of the farm in question, a letter written by the bank to plaintiff Marion Wright under date of September 27, 1934, and received by her, is quite significant. The letter follows:

"Dear Madam:

We have had it called to our attention that part of the fence on the western part of the property you are living on—I think around the orchard—is in need of repairs. We called up Mr. Woelmer the other day, asking him to go up there and look at the other part of the fence on which we had a complaint, but he claimed that it was fixed. I do not know who fixed it. Evidently you did yourself.

"We hate to be annoyed by having people call up complaining about the condition of these line fences. They must be fixed up to the satisfaction of the neighbors. Kindly look after the same and see whether they need any additional repairs and, if so, have it done at once.

"You have lived on these premises since we have had a deed for the same. For one year and a half we have received not one cent in the way of rent and the taxes on the farm have been accruing and the general condition of the farm has been going backward.

"I talked to the liquidating committee just yesterday and they definitely intend to do something on this in the near future. We are giving you ample warning that you cannot expect to forever occupy these premises without paying for the same. It may be a hardship on you, but I do not know what your intentions were at the time you gave a first mortgage on these premises, when you promised to do certain things and as collateral to that promise, you pledged the farm.

"We are not going to have some of our good customers of this bank look with disfavor on this institution because certain property which we own is not being kept up and whether you think you are in the right or not with the condition of line fences, we must insist that they be taken care of at once.

"Yours truly,

THE FIRST NATIONAL BANK OF MONROE,

EDMUND W. REISIG, Cashier."

EWR: ILM.

Either in 1934 or 1935 the trustees of the segregated assets of the defendant caused the buildings on the premises in question to be painted, this with full knowledge of the plaintiffs. In view of the claims of the plaintiffs of fraud and concealment on the part of defendant that the bank made the loan to plaintiffs, and that plaintiffs had not given a war-

ranty deed to defendant, it is also quite significant
that on March 29, 1935, the plaintiffs entered into
a written lease with a Mr. Conlisk, one of the trus-
tees of defendant, for the premises in question for a
period of one year from and after the first day of
April, 1935, and agreed to pay as rental for said
premises the sum of $300, which lease was an ex-
hibit in the case and the execution thereof was ad-
mitted by the plaintiffs.

The record in this case indisputably shows that
plaintiffs never paid any part of the principal, and
that after April, 1931, no part of the interest on
the mortgage; neither did they pay any of the rent
specified in the written lease, nor at any other time
paid any rent for the use of the premises, and never
paid any of the taxes assessed against said prem-
ises. The taxes for and including the year 1930 and
subsequent years until the present time have been
paid by defendant.

On April 10, 1937, defendant instituted summary
proceedings against plaintiffs before a circuit court
commissioner in and for the county of Monroe to
recover possession of the premises involved, and
upon the trial of that case the plaintiffs were in
court represented by an attorney, a Mr. Hill, of
Detroit, and at the conclusion of the trial in May,
1937, a judgment of ouster against said plaintiffs
was entered by said commissioner from which judg-
ment no appeal was ever taken. On October 20,
1939, a writ of restitution was issued out of said
court and was duly executed, plaintiffs being put out
of possession of the premises involved.

In December, following said ouster, the plaintiffs
filed their bill of complaint in this case claiming
that the mortgage executed by them is void on the
theory that the defendant, while administrator of
the estate of their father, by loaning to them the

sum of $7,500, and taking an assignment of the mortgage involved, violated its fiduciary relation by an act of self dealing. Plaintiffs also claim that the deed in question was void as the same was never knowingly executed by them and was a part of the transaction by which the mortgage in question was taken by the bank, that it was without consideration and should be canceled. The theory of the plaintiffs, that the defendant committed an act of self dealing in violation of its fiduciary duty in taking an assignment of the mortgage and the furnishing of the money, cannot be sustained. Even if the loan had been made directly by the defendant to the plaintiffs, and the note and mortgage in question had been given directly to the bank as mortgagee, the loan was as a matter of fact made to the plaintiffs who were the owners of the farm, and therefore the mortgage lien did not attach to property belonging to the estate, of which defendant was administrator, and was never at any time an obligation of said estate. Neither can we hold that the method by which the transaction of obtaining the loan and giving the mortgage was either a direct or indirect attempt on the part of the administrator to acquire property of the estate of which it was trustee. We find nothing in the record that rises to the dignity of evidence that tends to show any fraud or unconscionable conduct on the part of the defendant in its dealings with plaintiffs, either as administrator of the father's estate or as the owner of the mortgage on the premises in question.

It is the contention of plaintiffs that the transaction by which the bank acquired the mortgage in question was in violation of 3 Comp. Laws 1929, § 15824 (Stat. Ann. § 27.2990). We are not in accord with this view, but, even if it could be said that

the defendant in loaning the money and taking the mortgage in question was violating a duty it owed as fiduciary to the plaintiffs, the transaction at most would be only voidable, and the defendant in this instance has not only met plaintiffs' prima facie case, but has established beyond peradventure that no fraud or breach of trust was committed. The record is convincing that the defendant never intended or planned to take any advantage of plaintiffs nor to, in any way, deprive them of their inheritance. No fraud was intended or committed, either active or constructive, and we must hold that the trial court was correct in its determination that no fraud or wrongdoing had been committed by defendant; and as bearing upon the entry of a decree dismissing plaintiffs' bill because there had been no fraud or overreaching on the part of defendant shown by any credible witnesses, we quote the trial court's opinion, with which we are in accord, filed at the conclusion of the hearing:

"I don't know as it will benefit any of us to go into detail in argument of this matter. It is a case where the sympathy of the court might be moved towards the plaintiffs, but it is not a case where you are dealing with ignorant people. One of these plaintiffs graduated in the same class I did in high school in Monroe here in 1902, and she taught school for a good many years after that; so that you are not dealing with ignorant plaintiffs in this case. You are dealing with educated plaintiffs, at least one who took advantage of that education and made a living by it for years and years in this community.

"The plaintiffs must show by a preponderance of the evidence, must sustain the various allegations to permit the court to find in their favor. In passing upon that the court has to pass upon the credibility of the witnesses. All of the plaintiffs testified they knew nothing about this deed. It was entirely new to them until I think along about the

11th of May, 1937, when the register of deeds told them there was a warranty deed. Check your exhibits in this case; you will find a letter was received by Marion Wright, who, under the testimony in this case, handled this property and these deals for the other plaintiffs under their own testimony; Marion Wright had received a letter from the trust officer of the bank a considerable period before that; reference is clearly and unmistakably made to the existence of this deed and the fact that the bank owned the property by this deed and objected to the condition in which the plaintiffs were permitting it to exist. Again going back to your question of credibility, that bears considerable weight in the mind of the court.

"Then you have testimony of these plaintiffs with reference to what disposition was desired to be made by them and by the widow of her [their ?] deceased brother of this property; in other words, the theory of the plaintiffs being now that they were forced into this transaction against her [their ?] will. Yet the testimony of the local municipal judge here this morning, a party certainly disinterested in this case, said that a very short time after the closing of the probate case Marion Wright, the plaintiff in this case who handled the transaction for the other plaintiffs in this case and for herself, in conversation with him flatly contradicted any premises upon which such a theory might be evolved. Now, I say as a matter of credibility a court cannot surmount that and find that in this case they have sustained their various allegations by a preponderance of the evidence.

"It does not seem to me there is a thing in the world that this court can do under all the testimony in this case, even disregarding the question of laches, and the court finding that they did have knowledge of these transactions, I certainly think laches would exist, and laches would be a bar to these plaintiffs at the present time; because, as I say, you have at least three witnesses who through-

out the progress of this testimony have been mentioned by the plaintiffs frequently, Kiburtz, Conlisk and Gutmann, who are now dead; certainly the delay in instituting this action if they had that knowledge, and the court believes they did have knowledge from the testimony in this case, their delay in instituting this action until three material witnesses have died and cannot be presented in the determination of this case, would bring them under the rule of laches. But disregarding that entirely, the court is compelled to find that plaintiffs have failed to sustain the various allegations set up in the bill of complaint by a preponderance of the evidence, and for that reason the several grounds of relief prayed for in the bill of complaint should be denied, and the bill of complaint dismissed.''

It is also contended by the plaintiffs that the mortgage is invalid because usurious. The record discloses that Mr. Kiburtz the broker was to have $500 for financing the plaintiffs in the purchase of the farm. The bank's records show that $500 of the money loaned to plaintiffs was retained by it as a finance charge, and the uncontradicted testimony of Mr. Reisig, cashier of the bank, is that $100 of this sum was paid to Mr. Kiburtz for his efforts in attempting to secure the loan. The testimony of Mr. Reisig is to the effect that $400 of the $500 in question was treated as an advance payment of interest. This is contradicted by the plaintiffs, and we reach the conclusion from the bank's own accounting that at least $400 of the $7,500 loaned was retained by it as a finance charge and inured directly to its benefit. We find that this is out of proportion to any legitimate fee that the bank was entitled to receive, and, since the rate of interest was 7 per cent. annually, it amounted to more than can legally be charged and constitutes usury under 2 Comp. Laws 1929, §§ 9239–9241 (Stat. Ann. §§ 19.11–19.13). Therefore the plaintiffs claim the defendant has

actually taken or received a usurious sum of money. If such is the case, it subjects defendant to the penalty attached, that is, the loss of interest.    See 2 Comp. Laws 1929, § 9240 (Stat. Ann. § 19.12).

At the time the escrow agreement was entered into between plaintiffs and defendant on May 20, 1932, the plaintiffs were in default on their note and mortgage, even had they been given credit for the usurious amount retained by the bank, and therefore the execution and delivery of the deed in escrow could not be said to be without consideration.    Until the penalty is incurred the defendant has the right to receive and enforce payment of lawful interest on the amount actually owed, and could have enforced payment of the same by foreclosure at the time of the execution of said escrow agreement.    It cannot, therefore, be said that the defendant had collected more from plaintiffs by the retention of the $400 finance charge than lawful interest on the date of the execution of the escrow agreement.

This transaction, that is, the making of the escrow agreement and the delivery of the warranty deed, amounted to a voluntary settlement between the parties. It was a sale by the plaintiffs of their equity of redemption to the mortgagee, the consideration being the forbearance to foreclose and the acceptance of the property in full satisfaction of the mortgage debt, the sale to become absolute as of April 1, 1933.    At any time between the date the deed was placed in escrow until it became absolute, the plaintiffs could have cleared the property of the lien by the payment of the sum actually owed by them to defendant.    Until such date, April 1, 1933, it was intended only as security, but after that date an absolute conveyance of the legal title.    This the plaintiffs recognized by their subsequent conduct in making the lease of the premises in question above referred

to and in their failure to pay any taxes assessed against the farm for a period of several years.

Even though the contract of May 20, 1932, involved in part the payment of usury by the plaintiffs, its effect was a voluntary settlement of a usurious obligation. It was not necessary for the plaintiffs to pay this usurious sum and it was therefore a voluntary payment by them. The rule in this State is that one who has freely and of his own accord fulfilled a usurious contract cannot have relief or recover the money paid thereon. *Dykes* v. *Wyman,* 67 Mich. 236. Our research has failed to disclose a single case wherein the usurious debt was settled by taking the property, conveyed to secure it, where a court of equity has opened the transaction and allowed a redemption on the grounds of usury alone.

In the instant case the plaintiffs are seeking equitable relief. They are not entitled to equitable relief at least until they show their willingness and ability to do equity, which in this case would be the payment of the amount loaned to them by defendant with lawful interest, and the payment of taxes, which the defendant has paid to keep the premises in question from being sold for nonpayment thereof. The plaintiffs make no offer to do this.

We find no showing by plaintiffs here that appeals to the conscience of a court of equity. We are also in accord with the findings of the trial court that if plaintiffs ever had a cause of action against defendant their laches is a bar to such action for the reasons given by said court.

The decree entered by the trial court is affirmed, with costs to defendant.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, MC-ALLISTER, WIEST, and BUTZEL, JJ., concurred.