BEBEE v GRETTENBERGER

Docket No. 77-3225. Submitted March 15, 1978, at Lansing.—Decided April 4, 1978.

The defendants, Orin K., Laura A., and John and Jane Grettenberger, entered into a land contract for the sale of certain farmlands to plaintiff Roger C. Bebee. Later, in order to enable the plaintiffs Roger C. Bebee and Nancy M. Bebee to finance development of the land the defendants accepted a second martgage on the farmlands and a note and a second mortgage at 8 percent interest on the plaintiffs' home in Lansing as a security replacement for the defendants' interest in the land contract for the sale of the farmlands. The plaintiffs defaulted on the note and mortgage given to the defendants covering their Lansing home. The defendants commenced foreclosure by advertisement. The plaintiffs thereafter served the defendants with notice of rescission under the Federal Truth in Lending Act and commenced a suit in circuit court claiming that the interest rate on the second mortgage was usurious because it exceeded the rate of 7 percent allowed by statute. Prior to sale on foreclosure the plaintiffs secured an *ex parte* injunction on such sale from the Ingham County Circuit Court, Michael G. Harrison, J., acting for Jack W. Warren, J. The case was thereafter assigned to James T. Kallman, J. Defendants filed a motion for summary judgment which was granted, and an order in conformity with the opinion dissolving the injunction on the sale was entered. Plaintiffs appeal. *Held:*

1. All second mortgages are restricted to a maximum annual rate of interest of 7 percent while nonbank lenders qualifying for an exception to the 7 percent rate may charge up to 11 percent per annum interest on land contracts and first mortgages; the Court noted that such a classification scheme has been held reasonable.

2. The second mortgage was not merely an alter ego of the land contract, therefore the doctrine of "same transaction" did

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 45 Am Jur 2d, Interest and Usury §§ 30, 31, 69, 111, 295.
  55 Am Jur 2d, Mortgages § 149.
[5] 45 Am Jur 2d, Interest and Usury §§ 196, 210, 217.

not apply to validate the 8 percent interest rate on the second mortgage which was given in exchange for the land contract which provided for 8 percent interest.

3. The main contract itself is not declared void when it provides for a usurious rate of interest, but the seller is barred from recovering any interest that remains due and payable and the buyer is entitled to recover his attorney fees and court costs from the seller; however, any usurious interest already freely and voluntarily paid by the buyer cannot be recovered.

4. The defendants are entitled to repayment of the principal remaining due on the promissory note and are also entitled to proceed to enforce the second mortgage by foreclosure.

Reversed in part, affirmed in part. Plaintiffs to recover costs and attorney fees.

1. MORTGAGES—USURY—SECOND MORTGAGES—INTEREST—BANKS— NONBANK LENDERS—STATUTES.

All second mortgages are restricted to a maximum interest rate of 7% per annum regardless of whether the mortgage is from a bank or a nonbank lender (MCLA 438.31c; MSA 19.15[1c]).

2. MORTGAGES—LAND CONTRACTS—NONBANK LENDERS—INTEREST— EXCEPTIONS—STATUTES.

Nonbank lenders who qualify for an exception to the 7% maximum annual interest rate may charge up to 11% per annum interest on land contracts and first mortgages (MCLA 438.31c; MSA 19.15[1c]).

3. MORTGAGES—INTEREST—FIRST MORTGAGES—SECOND MORTGAGES— STATUTES.

The statutory classification scheme that mandates lower rates of interest on second mortgages than on first mortgages is reasonable (MCLA 438.31c; MSA 19.15[1c]).

4. MORTGAGES—INTEREST—VENDOR AND PURCHASER—LAND CONTRACTS—SAME TRANSACTION DOCTRINE—USURY—FIRST MORTGAGE—SECOND MORTGAGE.

The doctrine of "same transaction" does not apply to validate an otherwise usurious 8% per annum rate of interest on a second mortgage which was given in exchange for a land contract which provided for a valid 8% per annum rate of interest where the terms of the promissory note secured by the second mortgage differ in substantial and meaningful ways from the terms of the land contract, thus negating the claim that the second mortgage was merely the alter ego of the land contract or a "same transaction".

5. Usury—Vendor and Purchaser—Interest—Attorney Fees—
   Court Costs—Land Contract—Interest Remaining—Stat-
   utes.

   A seller who enters into a land contract which provides for a
   usurious rate of interest is barred from the recovery of any
   interest and the buyer is entitled to recover his attorney fees
   and court costs from the seller; the main contract is not void,
   and any usurious interest already freely and voluntarily paid
   by the buyer cannot be recovered, but usurious interest that
   remains due and payable may not be collected by the seller
   (MCLA 438.32; MSA 19.15[2]).

*Robert W. Luoma,* for plaintiffs.

*John P. O'Brien,* for defendants.

Before: Bashara, P. J., and Allen and M. J.
Kelly, JJ.

Allen, J. Where a prior land contract for unde-
veloped farmland containing an 8% annual inter-
est charge is cancelled and, at the request of the
land contract purchasers, there is substituted a
second mortgage on the purchasers' homestead
containing an 8% annual interest charge, is the
second mortgage in violation of MCLA 438.31c;
MSA 19.15(1c) of the state usury laws? On July 27,
1977, the trial court held there was no violation
and defendants could proceed to a public sale of
plaintiffs' residence. Plaintiffs appeal of right.

Plaintiff Roger Bebee, a real estate broker, was
employed by defendants to sell farmlands known
as the Old Ed Grettenberger Farm which defend-
ants had acquired by inheritance. When Roger
Bebee purchased the property himself he was cred-
ited with a $7,000 commission on the sale and, on
November 5, 1973, the parties entered into a land
contract for $70,000, with $12,000 paid down and
the balance of $58,000 to be paid at 8% interest in
monthly installments of $410. Payment in full was

required by November 5, 1978. In May, 1974, when $48,000 remained due on the contract, plaintiffs requested a deed from defendants in order to obtain a first mortgage loan of $175,000 from the First State Savings Association for the purpose of developing the farm for commercial purposes. On May 31, 1974, defendants gave the deed as requested and, in return for the deed so given them, the plaintiffs gave a second mortgage on their home at 6616 Old River Trail, Lansing, for $48,000 at 8% annual interest and monthly payments of $410. The entire balance was payable December 31, 1979, but $5,000 was payable September 10, 1974, and an additional $5,000 December 31, 1974.[1]

Plaintiffs' commercial venture failed and the loan association foreclosed on the first mortgage. When plaintiffs likewise defaulted on the promissory note secured by the second mortgage on their residence the defendants commenced foreclosure by advertisement. At that time the balance due on principal and interest on the second mortgage was $36,025.04. Plaintiffs served on defendants a notice of rescission under the Truth in Lending Act[2] and filed the present lawsuit claiming, among other things, that the interest rate on the second mortgage on plaintiffs' residence was usurious because it exceeded 7%. In March 1977, plaintiffs obtained an *ex parte* injunction on the foreclosure sale and, in June 1977, defendants filed a motion for summary judgment. Following a hearing, the trial court granted defendants' motion and dissolved the injunction, saying:

---

[1] Plaintiffs also gave a second mortgage on the farm on which the First State Savings Association had taken the first mortgage.

[2] Consumer Credit Protection Act, 15 USCA 1601 *et seq.* Count II of plaintiffs' complaint alleged violation of the Truth in Lending Act, 15 USCA 1601 *et seq.*, and Count I alleged violation of the Michigan usury law. The appeal in the instant case is taken on the trial court's ruling as to Count I only.

"It would lead to an absurd result, under these circumstances, to construe the statute as permitting an 8% interest rate on the land contract, but prohibiting that same interest rate as usurious merely because the subsequent transaction involved a second mortgage. And it would create an injustice to construe the statute as permitting plaintiffs to avoid payment of the note as a result of a change in the security interest that was made at their request and for their benefit. Such a result would not carry out the purpose of the statute, which is to prevent excessive interest rates."

Section 1 of the state usury law as amended, MCLA 438.31; MSA 19.15(1) provides that the rate of interest shall not exceed 7%. Subsections (2) (5) and (6) of § 1(c) provide for certain exceptions to the 7% limitation. These read:

"(2) For the period ending on December 31, 1981, *it is lawful for the parties to a note,* bond, or other evidence of indebtedness, executed after August 11, 1969, *the bona fide primary security for which is a first lien against real property,* or a land lease if the tenant owns a majority interest in the improvements thereon, or the parties to a land contract, *to agree in writing for the payment of any rate of interest,* but no such note, mortgage, contract, or other evidence of indebtedness shall provide that the rate of interest initially effective may be increased for any reason whatsoever * * * .

\* \* \*

"(5) The provisions of subsection (2) shall apply only to loans made by lenders approved as a mortgagee under the national housing act or regulated by the state, or by a federal agency, who are authorized by state or federal law to make such loans.

"(6) Notwithstanding subsection (5), *lenders or vendors not qualified to make loans under subsection (5) may make, or may have made, mortgage loans and land contracts specified in subsection (2)* on or after August 16, 1971, which mortgage loans and land contracts provide *for a rate of interest not to exceed 11% per*

*annum,* which interest shall be inclusive of all amounts defined as the "finance charge" in the federal truth in lending act (Public Act 90-321), and the regulations promulgated thereunder." MCLA 438.31c; MSA 19.15(1c). (Emphasis supplied.)

We must first decide which of two conflicting interpretations to place on the above provisions. Plaintiffs interpret subsection (2) to mean that interest on any loan secured by a second mortgage on real property may not exceed 7%. Defendants contend that subsection (6) contains an exception to the 7% limitation for lenders who are not banks. As interpreted by defendants, non-banks under subsection (6) may charge up to 11% on all loans secured by real property whether or not the security is a first or second mortgage. The trial court adopted defendants' interpretation. We reject defendants' interpretation. Subsection (6) permits non-bank lenders to make "mortgage loans and land contracts *specified in subsection (2)* * * * [at] * * * a rate of interest not to exceed 11% per annum". (Emphasis supplied.) But subsection (2) specifies only land contracts and first mortgages. Thus, as to these, non-bank lenders may charge up to 11% but, as to second mortgages, both banks and non-bank lenders are uniformly limited to 7%.

Support for our interpretation is found in *Smith v Department of Commerce, Corporation & Securities Bureau,* 79 Mich App 107; 261 NW2d 228 (1977). In that case plaintiff Smith attempted to file articles of incorporation for a non-bank lending corporation to be known as the Freedom Mortgage Company whose purpose was to provide second mortgage loans on single-family dwellings in excess of 7% interest per annum. The Corporation and Securities Bureau refused to file the articles, on grounds that the rate of interest to be charged

on second mortgages exceeded 7%. This Court affirmed and, in so doing, also held that the statutory classification scheme which mandates lower rates of interest on second mortgages than on first mortgages was not an unreasonable classification. The clear implication of *Smith* is that all second mortgages are restricted to a maximum interest rate of 7%.

Having determined that the interest rate charged on the second mortgage exceeds the statutory permissible rate, we must now decide whether, under the special circumstances of this case, the 8% interest charge is usury. On this issue the equities clearly favor defendants. Unfortunately, the law favors the plaintiffs. Perhaps if the second mortgage were but an alter ego substitution for the earlier land contract, we might find no violation of the statute. However, in at least the five respects footnoted below,[3] the terms of the promissory note secured by the second mortgage differ from the terms of the land contract. We find the differences substantial and meaningful. Thus, contrary to defendants' claim, we hold that the second mortgage is not merely the alter ego of the land contract or a "same transaction". Hence the

[3] (1) The realty securing the indebtedness is different.

(2) The parties are different. Nancy Bebee was not a named party on the land contract but is a signatory on the promissory note and second mortgage.

(3) The scheduled payments are different. Both the land contract and second mortgage called for payments of $410 per month, but the promissory note also required a payment of $5,000 by September 10, 1974, and an additional $5,000 by December 31, 1974.

(4) The date for payment in full is different. Under the contract, payment in full was required by November 5, 1978, but under the note, payment in full was extended until December 31, 1979.

(5) The legal relationship between the parties is different. Under the land contract the relationship is one between vendor and vendee but under a mortgage it is one of mortgagor and mortgagee. The time period for foreclosure and for redemption substantially differs.

doctrine of "same transaction" does not validate the interest rate on the second mortgage on the basis of the valid interest rate under the land contract. The clear language of the statute evidences a legislative intent to forbid interest rates on second mortgages which exceed 7%. Despite the equities in defendants' favor we hold that the legislative intent was violated, though unintentionally, in the situation before us. Though blameless, the interest rate charged by defendants on the second mortgage contract was usurious under the statute. To this extent the trial court erred.[4]

However, the trial court did not err in dissolving the injunction which prohibited foreclosure on plaintiffs' residence. The penalty for charging a usurious rate is the barring of the seller from recovery of any interest and the buyer is entitled to recover his attorney fees and court costs from the seller. MCLA 438.32; MSA 19.15(2). Usurious interest already freely and voluntarily paid by the buyer cannot be recovered but usurious interest remaining due and payable may not be collected. *Wright v First National Bank of Monroe,* 297 Mich 315, 328; 297 NW 505 (1941). The main contract itself is not declared void. *Sienkiewicz v Leonard Mortgage Co,* 59 Mich App 154, 157; 229 NW2d 352 (1975). Defendants are entitled to repayment of the principal remaining due on the promissory note and are also entitled to proceed to enforce the second mortgage by foreclosure.

Reversed in part, affirmed in part. Plaintiffs to recover costs and attorney fees as prescribed by MCLA 438.32; MSA 19.15(2).

---

[4] The trial court's opinion was made without benefit of *Smith v Department of Commerce, Corporation & Securities Bureau, supra,* in which the statute was construed as limiting all second mortgages to 7% interest.