## PATEL v HOLLAND

Docket No. 51797. Submitted May 14, 1981, at Detroit.—Decided
March 18, 1982. Leave to appeal applied for.

In 1974, V. U. Patel purchased a home on land contract from
John R. and Evelynn Holland. The land contract as executed
provided that the rate of interest would be at seven percent per
annum and further provided that every five years the sellers
could elect to change the interest to a rate of interest no more
than one percent under the average mortgage interest. In 1978,
the sellers sought to increase the rate of interest from seven
percent to nine percent. Patel refused to pay the increase and
sought, in Wayne Circuit Court, declaratory judgment and an
injunction restraining defendant sellers from seeking foreclo-
sure. Myron H. Wahls, J., determined that the provision provid-
ing for the increase in the rate of interest was invalid, usurious
and unenforceable, granted summary judgment in favor of
plaintiff and issued an injunction restraining defendants from
foreclosing on the land contract. Defendants appeal. *Held:*

The provision providing for an increase in the rate of interest
was enforceable since the resultant rate of interest was less
than the statutory maximum of 11 percent per annum.

Reversed.

D. C. RILEY, J., dissented. She would hold that the statutory
provision making unenforceable contract terms providing for
increases in rates of interest on notes, mortgages and land
contracts secured by real property is applicable to the land
contract in question. She would affirm.

OPINION OF THE COURT

1. VENDOR AND PURCHASER — LAND CONTRACTS — USURY.

Land contracts between natural persons entered into between
August 16, 1971, and December 31, 1981, providing for an
increase in the original rate of interest upon the vendor's

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 45 Am Jur 2d, Interest and Usury §§ 64, 66.
77 Am Jur 2d, Vendor and Purchaser § 313.

election are valid so long as the resulting rate of interest does
not exceed 11 percent (MCL 438.31c; MSA 19.15[1c]).

DISSENT BY D. C. RILEY, J.

2. VENDOR AND PURCHASER — LAND CONTRACTS — USURY.
   *A provision in a land contract executed between August 11, 1969,
   and December 31, 1981, between natural persons which pro-
   vides for an increase in the original rate of interest upon the
   vendor's election is unenforceable (MCL 438.31c; MSA
   19.15[1c]).*

*A. Ross MacEwen,* for plaintiff.

*John R. Holland,* for defendants.

Before: D. F. WALSH, P.J., and D. C. RILEY and
R. D. KUHN,* JJ.

PER CURIAM. The relevant facts in this case are
concisely stated in our colleague's dissenting opin-
ion. We disagree, however, with the interpretation
contained therein of the statutory provisions perti-
nent to the issue before the Court in this appeal.
The issue may be stated as follows:

Does the provision of subsection (2) of MCL 438.31c;
MSA 19.15(1c), which precludes an increase in the
initial rate of interest contained in certain notes, mort-
gages, contracts and other evidences of indebtedness
specified in subsection (2) apply also to mortgages and
land contracts permitted under subsection (6)?

We hold that it does not and reverse.
Subsections (2), (5) and (6) of MCL 438.31c; MSA
19.15(1c) provide in pertinent part as follows:

"(2) For the period ending on December 31, 1981, it is
lawful for the parties to a note, bond, or other evidence
of indebtedness, executed after August 11, 1969, the

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

bona fide primary security for which is a first lien against real property, or a land lease if the tenant owns a majority interest in the improvements thereon, or the parties to a land contract, *to agree in writing for the payment of any rate of interest,* but the note, mortgage, contract, or other evidence of indebtedness shall not provide that the rate of interest initially effective may be increased for any reason whatsoever.

\* \* \*

"(5) The *provisions* of subsection (2) shall apply *only* to loans made by lenders approved as a mortgagee under the national housing act or regulated by the state, or by a federal agency, who are authorized by state or federal law to make such loans.

"(6) Notwithstanding subsection (5), lenders or vendors not qualified to make loans under subsection (5) may make, or may have made, mortgage loans and land contracts *specified* in subsection (2) on or after August 16, 1971, which mortgage loans and land contracts provide for a rate of interest not to exceed 11% per annum, which interest shall be inclusive of all amounts defined as the 'finance charge' in the truth in lending act \* \* \*, and the regulations promulgated thereunder." (Emphasis supplied.)

It is apparent from a reading of the foregoing statutory provisions that subsection (2) does two things:

First, it *specifies* a certain kind of note or contract, to wit:

"\* \* \* a note, bond or other evidence of indebtedness, executed after August 11, 1969, the bona fide primary security for which is a first lien against real property, or a land lease if the tenant owns a majority interest in the improvements thereon, or \* \* \* a land contract \* \* \*."

Second, it contains *provisions* relating to those kinds of notes and contracts, to wit:

"(2) For the period ending on December 31, 1981, it is lawful for the parties [to a note or contract specified in this section] to agree in writing for the payment of any rate of interest, but the note, mortgage, contract, or other evidence of indebtedness shall not provide that the rate of interest initially effective may be increased for any reason whatsoever."

Subsection (5) states that the *provisions* of subsection (2) apply *only* to loans made by certain regulated or approved lenders.

Subsection (6) permits lenders not included under subsection (5) to make mortgage loans and land contracts of the type *specified* in subsection (2), but it contains its own *provisions* governing those loans or contracts, *i.e.,* they must be made on or after August 16, 1971, and provide for an interest rate not to exceed 11% per annum including finance charges.

As we read the statute, that part of subsection (2) which provides that the rate of interest initially effective may not be increased is one of the *provisions* of subsection (2) which, pursuant to subsection (5), applies only to loans made by regulated and approved lenders described in subsection (5) and not to the subsection (6) transaction involved in this case.

In other words, by virtue of subsection (6), a lender not described in subsection (5) may enter into a subsection (2) transaction, *i.e.,* a transaction involving "a note, bond, or other evidence of indebtedness, executed after August 11, 1969, the bona fide primary security for which is a first lien against real property, or a land lease if the tenant owns a majority interest in the improvements thereon, or * * * a land contract". The statutory provisions, however, which regulate these notes or contracts are not the subsection (2) provisions

which allow any rate of interest and preclude any increase in the rate of interest but rather the subsection (6) provisions which require that the note or contract be entered into on or after August 16, 1971, and limit the rate of interest to 11% per annum including finance charges. We conclude, therefore, that the subsection (2) provision precluding an increase in the initial rate of interest would not apply to the subsection (6) transaction involved in this case.

The legislative history of the usury statute, MCL 438.31 *et seq.;* MSA 19.15 *et seq.,* lends support to the foregoing interpretation of the relevant statutory provisions. That statute has been the subject of considerable legislative attention over the years. The modern history of the statute began with 1966 PA 326. That act provided a limitation of 5% per annum on interest rates unless the parties agreed in writing to a rate not exceeding 7% per annum. The act contained no provisions relating to interest escalation, and no distinction was made between regulated and unregulated lenders.

The first amendatory act, 1969 PA 305, introduced several restrictions upon a loan agreement. The act provided that the lender shall not require any deposit, other than an escrow account, to be maintained by the borrower, that the lender not impose or collect any payment pursuant to a discount or point system and that the note contain no provision raising the rate of interest.

"A provision in any note, mortgage, contract or other evidence of indebtedness, heretofore or hereafter made, that the rate of interest initially effective may be increased for any reason is unenforceable in any court in this state." 1969 PA 305, § 2.

This act did not distinguish between regulated and nonregulated lenders.

Several months later, 1970 PA 75 again amended the statute. This amendment replaced the former subsection (2) with a new subsection substantially the same as the present subsection (2). The provisions in subsection (2) of the 1970 act applied to any note, bond, evidence of indebtedness, or land contract between any parties, executed after August 11, 1969. In the same sentence that specified virtually all loan transactions, the act stated that:

"* * * no such note, mortgage, contract or other evidence of indebtedness shall provide that the rate of interest initially effective may be increased for any reason whatsoever." 1970 PA 75, § 2.

This act drew no distinction between regulated and nonregulated lenders.

Distinctions between approved or regulated lenders and natural persons were first made in 1971 PA 94. That act added subsections (3), (4) and (5) to the previous statute. Subsection (5) provided:

"(5) The provisions of subsection (2) shall apply only to loans made by lenders approved as a mortgagee under the national housing act or regulated by the state, or by a federal agency, who are authorized by state or federal law to make such loans and mortgage loans *and land contracts between natural persons.* Loans and land contracts between natural persons under subsection (2) shall not exceed 6 per year." 1971 PA 94, § 5. (Emphasis supplied.)

Thus, the statute, in late 1971, provided unambiguously that the restrictions in subsection (2) applied to land contracts between natural persons.

The mid-1971 amendment was apparently unsatisfactory, however, for later that year the Legisla-

ture again amended the statute. 1971 PA 228 deleted from subsection (5) the statement that the provisions of subsection (2) shall apply to land contracts between natural persons. This amendment added the present subsection (6), apparently covering loans between natural persons. Subsequent amendments have retained this scheme.

It is clear, therefore, that although subsection (5) previously expressly applied the provisions of subsection (2), including the nonescalation of interest provision, to land contracts between natural persons the Legislature intentionally deleted that part of subsection (5) in 1971. Had the Legislature intended that the subsection (2) restrictions continue to apply to land contracts between natural persons, it must be assumed that it would have expressly so provided.

We hold that the nonescalation of interest provision of subsection (2) does not apply to land contracts between natural persons entered into pursuant to the provisions of subsection (6).

Reversed. Costs to appellant.

D. C. RILEY, J. (dissenting). Plaintiff and defendants entered into a land contract for the purchase of a home on March 20, 1974. The contract contained a clause allowing the defendants to vary the interest rate at five-year intervals. The provision in issue provided:

"Every 5 years sellers may change interest to no more than 1% [percent] under average mortgage interest (FHA, VA, or Standard) is so elect."

Neither party to the contract was an approved lender under any federal or state banking laws. The contract called for payment of $25,000 at the

rate of $200 per month at seven percent interest for 18-3/4 years.

Defendants sought to increase the interest rate from seven percent to nine percent effective April 1, 1979, and demanded an increase in payments. Plaintiff refused to pay the increase, contending that the contract provision concerning defendants' right to unilaterally increase the interest rate was usurious and therefore illegal. When defendants threatened foreclosure, plaintiff filed the instant lawsuit seeking declaratory and injunctive relief.

The trial court concluded that under MCL 438.31c(2) and (6); MSA 19.15(1c)(2) and (6), "the provision in the contract providing for an increase of the rate of interest initially agreed upon is invalid, usurious and unenforceable". The trial judge granted summary judgment pursuant to GCR 1963, 117.2(2), failure to state a valid defense. Defendants appeal as of right from the order granting summary judgment and from an injunction entered May 9, 1980.

Defendants did not deny that the provision in issue was in the contract nor did they deny its terms. The trial court, therefore, was not faced with any factual questions but, rather, had only to decide whether the contract provision was legally valid. If the clause is usurious, then defendants have failed to state a valid defense and the grant of summary judgment was proper.

The proper application of GCR 1963, 117.2(2) was recently stated by this Court in *Hanon v Barber*, 99 Mich App 851, 854-855; 298 NW2d 866 (1980):

"A motion for summary judgment based on the failure to state a valid defense tests the legal sufficiency of the pleaded defense. Such motion is tested by reference to the pleadings alone, *Durant v Stahlin*, 375 Mich 628,

644; 135 NW2d 392 (1965), *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974), with all well-pleaded allegations accepted as true, *Minor Dietiker v Mary Jane Stores of Michigan, Inc,* 2 Mich App 585, 588; 141 NW2d 342 (1966). The proper test for such a motion is whether defendant's defenses are so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery. *Crowther v Ross Chemical & Mfg Co,* 42 Mich App 426, 431; 202 NW2d 577 (1972), *Bob v Holmes,* 78 Mich App 205, 211; 259 NW2d 427 (1977), *Michigan National Bank of Detroit v Dunbar,* 91 Mich App 385, 387; 283 NW2d 747 (1979)."

In the present case, if the trial court properly found the provision to be invalid as a matter of law, then "no factual development could possibly deny plaintiff's right to recovery" and summary judgment would be proper.

The statutory provisions involved provide in pertinent part:

"The interest of money shall be at the rate of $5.00 upon $100.00 for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum." MCL 438.31; MSA 19.15(1).

"(2) For the period ending on December 31, 1981, it is lawful for the parties to a note, bond, or other evidence of indebtedness, executed after August 11, 1969, the bona fide primary security for which is a first lien against real property, or a land lease if the tenant owns a majority interest in the improvements thereon, or the parties to a land contract, to agree in writing for the payment of any rate of interest, *but the note, mortgage, contract, or other evidence of indebtedness shall not provide that the rate of interest initially effective may be increased for any reason whatsoever.*

\* \* \*

"(3) Subsection (2) shall not impair the validity of a transaction or rate of interest lawful without regard to subsection (2).

\*   \*   \*

"(5) The provisions of subsection (2) shall apply only to loans made by lenders approved as a mortgagee under the national housing act or regulated by the state, or by a federal agency, who are authorized by state or federal law to make such loans.

"(6) Notwithstanding subsection (5), lenders or vendors not qualified to make loans under subsection (5) may make, or may have made, mortgage loans and land contracts specified in subsection (2) on or after August 16, 1971, which mortgage loans and land contracts provide for a rate of interest not to exceed 11% per annum, which interest shall be inclusive of all amounts defined as the 'finance charge' in the truth in lending act, Public Law 90-321, and the regulations promulgated thereunder." MCL 438.31c; MSA 19.15(1c). (Emphasis added.)

Under § 438.31, the parties may stipulate in writing to an interest rate not greater than seven percent. Exceptions to the seven percent limitation are codified in subsections (2), (5) and (6) of § 1(c). Under subsection (2), the parties to a land contract executed after August 11, 1969, but before December 31, 1981, may agree in writing to any rate of interest (subject to criminal usury, MCL 438.41; MSA 19.15[51]), subject to the limitations that the contract "shall not provide that the rate of interest initially effective may be increased for any reason whatsoever". Subsection (5) states that the provisions of subsection (2) shall apply *only* to loans made by specified approved lenders.

The key to the present case, I believe, is found in subsection (6). That section provides that "notwithstanding subsection (5)", a lender such as the present defendants "may make, or may have

made, * * * land contracts *specified in subsection (2)* * * * which * * * provide for a rate of interest not to exceed 11%". (Emphasis added.)

Defendants, therefore, could have initially made the land contract with a rate of interest up to 11 percent. However, subsection (6) is applicable only to land contracts specified in subsection (2). Such contracts shall not provide that the initially effective rate of interest be increased. The provision in the present case provides for an increase in the initial rate upon defendants' election and, therefore, is invalid as a matter of law. The remaining portions of the contract, providing for seven percent interest, remain valid pursuant to subsection (3). See *Bebee v Grettenberger,* 82 Mich App 416, 421; 266 NW2d 829 (1978).

Therefore, I would affirm the trial court.