CORRIGAN v INSILCO CORPORATION

Docket No. 102645. Submitted October 6, 1988, at Marquette. Decided April 3, 1989. Leave to appeal applied for.

Richard and Linda Corrigan executed a retail installment sales contract with Miles Homes, a division of Insilco Corporation, for building materials and plans to construct a residential home. The sales contract indicated that interest would be charged at an annual percentage rate of 9½ percent, with the debt being secured by a mortgage on the property where the home was to be built. The Corrigans had executed a mortgage to Miles Homes on their real property. In addition, the Corrigans had executed two earlier mortgages on the same property to the Bank of Stephenson. All of these mortgages were assigned to Miles Finance Corporation. The Corrigans stopped making payments on December 3, 1984. Miles Finance Corporation threatened to foreclose on the mortgages. On October 3, 1986, the Corrigans filed a complaint against Insilco Corporation and Miles Finance Corporation in Menominee Circuit Court alleging that the sales contract interest rate was usurious and requesting injunctive relief. Plaintiffs filed a motion for summary disposition alleging that the interest rate was governed by the general usury statute, which provides for a maximum interest rate of seven percent. Defendants contended that the interest rate was governed by the Retail Installment Sales Act, which allows an interest rate of up to ten percent per annum on a retail installment sales contract. The court, Francis D. Brouillette, J., denied the motion for summary disposition. Plaintiffs appealed by leave granted.

The Court of Appeals *held:*

The court correctly denied plaintiffs' motion for summary disposition. The Retail Installment Sales Act creates a statutory exception to the general usury statute regulating the legal rate of interest which may be charged on obligations collateral-

REFERENCES

Am Jur 2d, Interest and Usury §§ 63-75, 122-133; Mortgages § 149.

Validity and construction of provision (escalator clause) in land contract or mortgage that rate of interest payable shall increase if legal rate is raised. 60 ALR3d 473.

ized by a real estate mortgage. Since the RISA allows interest rates up to ten percent when the principal balance exceeds $500, the 9½ percent interest rate contained in the sales contract, secured by the note and mortgage, is proper.

Affirmed.

1. INTEREST — RETAIL INSTALLMENT SALES ACT — REAL ESTATE MORTGAGES.

The Retail Installment Sales Act creates a statutory exception to the general usury statute regulating the legal rate of interest which may be charged on obligations collateralized by a real estate mortgage (MCL 445.851 *et seq.*; MSA 19.416[101] *et seq.*).

2. INTEREST — USURY — TIME PRICE DIFFERENTIALS.

The general usury statute generally sets the legal rate of interest at no more than seven percent, but makes an exception providing that the seven percent rule does not apply to any time price differential which may be charged upon sales of goods or services on credit (MCL 438.31; MSA 19.15[1]).

3. INTEREST — STATUTES — JUDICIAL CONSTRUCTION — USURY.

A court in construing interest statutes must look beyond the form to the true nature of a transaction to determine whether it is usurious.

*Doyle & Ladd, P.C.* (by *Thomas A. Ladd*), for plaintiffs.

*Hansley, Neiman, Peterson & Beauchamp, P.C.* (by *Russell W. Hall*), for defendants.

Before: GRIBBS, P.J., and CYNAR and J. T. KALLMAN,* JJ.

J. T. KALLMAN, J. Plaintiffs appeal by leave granted the order of the Menominee Circuit Court denying plaintiffs' motion for summary disposition on their usury claim.

On July 7, 1978, plaintiffs executed a retail installment sales contract with Miles Homes for building materials and plans to construct a residential home. The cash price listed on the install-

* Circuit judge, sitting on the Court of Appeals by assignment.

ment contract was $21,041 and the finance charge was $6,265.05. With taxes and other costs, total payment came to $28,247.69. The sales contract indicated that interest would be charged at an annual percentage rate of 9½ percent and that the debt was to be secured by a mortgage on the property where the home was to be built.

On August 9, 1978, plaintiffs executed a mortgage to Miles Homes, a division of Insilco Corporation, on their real property. This mortgage secured the subject matter of the sales contract, i.e., the building materials and specifications for plaintiffs' residential home. Prior to the mortgage executed in favor of Miles Homes, plaintiffs executed two separate mortgages on the same property to the Bank of Stephenson.

On December 23, 1982, all of the existing mortgages were assigned to defendant Miles Finance Corporation, including the mortgages with the Bank of Stephenson as mortgagee. Plaintiffs have failed to make payments on any of these obligations since December 3, 1984.

On October 3, 1986, plaintiffs filed a complaint against the defendants, alleging that the sales contract interest rate was usurious and requesting injunctive relief.

On December 5, 1986, plaintiffs filed a motion for summary disposition on their usury claim alleging the sales contract interest rate was governed by the general usury statute, MCL 438.31 *et seq.*; MSA 19.15(1) *et seq.*, which provides for a maximum interest rate of seven percent. Defendants argue that it is regulated by the Retail Installment Sales Act (RISA), MCL 445.851 *et seq.*; MSA 19.416(101) *et seq.*, which allows an interest rate of up to ten percent per annum pursuant to MCL 445.857(1)(b); MSA 19.416(107)(1)(b) on a retail installment sales contract. After a hearing

held on July 7, 1987, the trial court denied plaintiffs' motion, and this interlocutory appeal ensued.

The issue presented in this case is one of first impression: Does the RISA create a statutory exception to the general usury statute regulating the legal rate of interest which may be charged on obligations collateralized by a real estate mortgage?

The relevant inquiry is whether the Legislature purposefully intended to exclude from the ambit of RISA a mortgage on real estate given as security for building materials used in the construction of a new home on the basis that the RISA defines a retail installment contract as

> an instrument, other than a retail charge agreement or an instrument reflecting a sale made pursuant to a retail charge agreement, entered into in this state evidencing a retail installment transaction, whether secured or unsecured. *Retail installment contract includes a chattel mortgage, a security agreement, a conditional sale contract, or a contract in the form of a bailment or a lease* if the bailee or lessee contracts to pay as compensation for their use a sum substantially equivalent to or in excess of the value of the goods sold and if it is agreed that the bailee or lessee is bound to become, or for no other or a merely nominal consideration, has the option of becoming, the owner of the goods upon full compliance with the provisions of the bailment or lease. [Emphasis added. MCL 445.852(g); MSA 19.416(102)(g).]

This Court finds that the trial court correctly denied plaintiffs' motion for summary disposition on the basis of the interpretation of the following statutes.

The usury statute, MCL 438.31; MSA 19.15(1), generally sets the legal rate of interest at no more than seven percent. However, by its own terms § 1

of that statute makes an exception to the general rule, providing that the seven percent rule does not apply "to any time price differential which may be charged upon sales of goods or services on credit."

Plaintiffs argue that, because the mortgage in question is a second or junior mortgage, the interest rate cannot exceed seven percent because defendant is not a regulated lender, relying on *Bebee v Grettenberger,* 82 Mich App 416; 266 NW2d 829 (1978). However, the heart of plaintiffs' argument is that the RISA does not provide an exception to the general usury statute given the statutory definition of a retail installment contract cited above, and we are unpersuaded by this argument.

MCL 445.852(a); MSA 19.416(102)(a) defines "goods" under the RISA as follows:

> (a) "Goods" means all tangible chattels personal when purchased primarily for personal, family, or household use and not for commercial or business use, but not including motor vehicles, money, things in action, or intangible personal property or their equivalent. *Goods includes chattels which are furnished or used, at the time of sale or subsequently, in the modernization, rehabilitation, repair, alteration, improvement, or construction of real property so as to become a part of the property whether or not severable from the property and which are not covered by the provisions of the home improvement finance act, Act No. 332 of the Public Acts of 1965, being sections 445.1101 to 445.1431 of the Michigan Compiled Laws.* [Emphasis added.]

Since the Home Improvement Finance Act, MCL 445.1102(g); MSA 19.417(102), excludes from its definition of "goods" chattels used in the construction of new homes, it would follow that the Legislature intended that new home construction be

covered under the RISA definition of "goods" pursuant to MCL 445.852(a); MSA 19.416(102)(a) cited above.

A specific statute shall control over a general statute where the two deal with the same subject. *Imlay Twp Primary School Dist No 5 v State Bd of Ed,* 359 Mich 478, 485; 102 NW2d 720 (1960); *Hisaw v Hayes,* 133 Mich App 639, 645; 350 NW2d 302 (1984). Further, the transaction was clearly a retail installment transaction pursuant to MCL 445.852(f); MSA 19.416(102)(f), which states:

> "Retail installment transaction" means any transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract or a retail charge agreement, which provides for a time price differential and under which the buyer agrees to pay the unpaid balance in 1 or more installments.

Therefore, we hold that the RISA, as a specific statute, controls the transaction at bar to exclude it from the seven percent interest limitation under the general usury statute. A careful reading and synthesis of MCL 445.1102; MSA 19.417(102), MCL 445.852(a) and (g); MSA 19.416(102)(a) and (g) leads us to this conclusion.

MCL 445.857(1)(b); MSA 19.416(107)(1)(b) states that the interest rate on a retail installment sales contract shall not exceed ten percent when the principal balance exceeds $500. Therefore, the 9½ percent interest rate contained in the retail installment sales contract, secured by the note and mortgage, is proper.

In *Hartwick Lumber Co v Perlman,* 245 Mich 3; 222 NW 147 (1928), our Supreme Court, at a time prior to the enactment of the RISA, was presented with a similar factual situation. Perlman wanted to construct a store and apartment building on his

property. Hartwick Lumber contracted to provide Perlman with the necessary building supplies, on credit, evidenced by a promissory note and secured by a second mortgage on the property. The only issue presented to the *Hartwick* Court was whether the second mortgage was usurious. Citing the predecessor to the present general usury statute, 2 Comp Laws 1915, § 5998, our Supreme Court held:

> Plaintiff had a right to charge more for its lumber sold on credit than when sold for cash. That it did so does not render the mortgage herein usurious. [Citation omitted. *Id.* at 6.]

Prior to the enactment of the RISA, our Supreme Court had no difficulty with a time price differential contract for building materials secured by a second mortgage on the real estate as evidenced by the *Hartwick* case cited above. Moreover, our Supreme Court has held that "[u]nless the sale and purchase of property is a mere pretense, the seller may charge a greater price for goods bought on credit than for cash without rendering the transaction usurious." *Attorney General v Contract Purchase Corp,* 327 Mich 636, 643; 42 NW2d 768 (1950). The sale of goods in the case at bar is not a mere pretense, but rather a valid sale of goods in the construction of real property as defined by the RISA, MCL 445.852; MSA 19.416(102).

In addition, in *Silver v International Paper Co,* 35 Mich App 469, 472; 192 NW2d 535 (1971), lv den 386 Mich 764 (1971), a panel of this Court stated:

> The Legislature could have easily expressed its desire to include differentials in the usury statute if it had so desired; instead it expressly exempted such a classification from the purview of the stat-

ute. The time price differential exemption was probably expressed in order to avoid possible statutory confliction with the retail installment sales act's "time price differential" provision. Both statutes were enacted into positive law on the same date, *i.e.,* March 10, 1967.

In construing interest statutes, the Court must look beyond the form to the true nature of the transaction to determine whether it is usurious. *Paul v U S Mutual Financial Corp,* 150 Mich App 773, 780; 389 NW2d 487 (1986); *Barck v Grant State Bank,* 137 Mich App 440, 444; 357 NW2d 872 (1984), lv den 421 Mich 858 (1985). The substance of the transaction, rather than the form, governs. *Heberling v Palmer's Mobile Feed Service, Inc,* 119 Mich App 150, 154; 326 NW2d 404 (1982), lv den 417 Mich 995 (1983). Time price differential credit contracts have been a long-standing expressed exception to the general usury statute, MCL 438.31; MSA 19.15(1), *Hartwick, supra,* and we hold that they still are.

The fact that the RISA fails to specifically list real estate mortgages as a method of securing a retail installment sales contract should not be interpreted as an intentional omission by our Legislature. Legislative intent can be inferred from a recent amendment of the RISA which allows such contracts with time price differentials on mobile home sales. MCL 445.852(a), (c); MSA 19.416(102)(a), (c). This Court has held the maxim "expressio unius est exclusio alterius" is only an aid in interpreting legislative intent. It cannot govern where legislative intent is opposed to its application. *Chesapeake & O R Co v Public Service Comm,* 59 Mich App 88, 101; 228 NW2d 843 (1975), lv den 394 Mich 818 (1975).

Excluding real estate mortgages as security for repayment in cases such as this, where the chat-

tels sold are construction supplies for a new home, would endorse an arbitrary and unnecessary distinction calling for usurious penalties in a sale of goods on credit depending on the type of security taken for the contract. Securing the construction supplies with a real estate mortgage, as in this case, is no different than securing a washing machine with a chattel mortgage.

We affirm the decision of the Menominee Circuit Court.