MICHIGAN MOBILE HOMEOWNERS ASSOCIATION v BANK OF
THE COMMONWEALTH

1. USURY—STATUTES—CONTRACTS—RECOVERY OF INTEREST—INDEPEN-
DENT ACTION.

Usury is historically a statutory defense which can be invoked to
prevent enforcement of a usurious contract, and the enactment
of recent legislation changing the language of the enforcement
section of the general usury law does not change the nature of
the action so as to empower borrowers or buyers to bring an
independent action to recover interest paid on usurious con-
tracts (MCLA 438.32).

2. USURY—STATUTES—CONTRACTS—INJUNCTIONS—RECOVERY OF INTER-
EST.

A statute which permits a party to a usurious contract to have
his statutory rights protected or enforced by injunctive order
was intended to provide a means by which borrowers can
restrain lenders from undertaking enforcement of a usurious
contract by foreclosure of a mortgage or land contract or
seizure of goods, but such protection is limited to an injunctive
order, and the statute does not permit a borrower to bring an
independent action to recover interest paid on a usurious
contract (MCLA 438.31c[8]).

3. EQUITY—USURY—AVOIDANCE OF USURIOUS CONTRACT—TENDER—
LEGAL INTEREST.

A party seeking the equitable relief of avoidance of a usurious
contract must first do equity by tendering the unpaid balance
owing plus interest at the legal rate.

4. USURY—DEFENSE OF USURY—WAIVER—SALES—MOBILE HOMES—EQ-
UITY—INJUNCTIONS—STATUTES.

There is no authority to support the grant of an injunction

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 55 Am Jur, Usury § 4.
  45 Am Jur 2d, Interest and Usury §§ 5–15.
[5] 68 Am Jur 2d, Secured Transactions §§ 143–145.
[6] 16 Am Jur 2d, Constitutional Law §§ 421–425.
  73 Am Jur 2d, Statutes §§ 430–438.

restraining lenders from entering into or receiving agreements involving the sale of mobile homes where the finance charges exceed 7% per annum, because the usury statute speaks of the rights of a party to a transaction subject to the act, and not those of an inchoate class of persons who may in the future deal with the lenders; further, it is questionable whether the trial court could enjoin defendants from entering into usurious contracts in the future, since such parties who might enter into those contracts could, if they so desired, waive the defense of usury by voluntary payment (MCLA 438.31 *et seq.*).

5. SALES—MOBILE HOMES—STATUTES—RETAIL INSTALLMENT SALES ACT —USURY.

The retail sale of mobile homes has been brought within the scope of the retail installment sales act and is thus no longer subject to the general usury law (MCLA 438.31 *et seq.*, 445.852[c]).

6. STATUTES—STATUTORY RIGHTS—VESTED RIGHTS—LEGISLATIVE ACTION.

A statutory defense, or a statutory right, though a valuable right, is not a vested right, and the holder thereof may be deprived of it by legislative action.

Appeal from Wayne, Benjamin D. Burdick, J. Submitted Division 1 May 7, 1974, at Detroit. (Docket Nos. 15917, 15955.) Decided October 21, 1974. Leave to appeal denied, 393 Mich —.

Complaint by Michigan Mobile Homeowners Association, the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (U.A.W.) and its Michigan Community Action Program, and several individual plaintiffs, against Bank of the Commonwealth, Wayne Out-County Teachers Credit Union, National Bank Wyandotte-Taylor, and Peoples Bank of Trenton, for recovery of usurious interest charges and to enjoin defendants from charging more than 7% interest on financing of mobile homes. The Attorney General intervened as a

party plaintiff. Summary judgment for defendants. Plaintiffs appeal. Affirmed.

*Rothe, Marston, Mazey, Sachs, O'Connell, Nunn & Freid, P. C.* (by *D. Charles Marston* and *Ralph O. Jones),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Edwin M. Bladen,* Assistant Attorney General, for intervening plaintiff.

*Butzel, Long, Gust, Klein & Van Zile* (by *Rockwell T. Gust, Leslie W. Fleming,* and *Edward M. Kronk),* for defendant Bank of the Commonwealth.

*Dickinson, Wright, McKean & Cudlip* (by *Russell A. McNair, Jr., Lawrence M. Kelly,* and *Charles T. Harris),* and *Richard W. Look,* for defendant National Bank Wyandotte-Taylor.

*Foster, Lindemer, Swift & Collins, P. C.,* and *Raubolt & MacDonald,* for defendant Peoples Bank of Trenton.

Before: BASHARA, P. J., and McGREGOR and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. On April 11, 1972, plaintiffs commenced a class action suit on behalf of themselves and other purchasers of mobile homes who financed the purchase of said mobile homes by means of a sales contract bearing interest provisions greater than 7% per annum simple interest, where said contract is presently being held by defendant financial institutions. Plaintiffs alleged that said mobile home sales contracts were

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

subject to the 7% interest provisions of the general usury law, MCLA 438.31; MSA 19.15(1), and that defendant financial institutions were charging and collecting interest on these contracts in excess of the amount authorized by said statute.

In their complaint plaintiffs prayed for the following relief:

"A. That the defendants answer this Complaint and provide this Court with the names and addresses of all the mobile home purchasers who have had the purchases of their mobile homes financed through the defendants in order that notice of the pendency of this class action may be given to each of them under such terms and conditions as the court might direct.

"B. That the defendants account to the plaintiffs, for all interest charges, finance charges and fees that have heretofore collected [sic], in violation of the usury laws of the State of Michigan, as alleged in this Complaint, and refund the same to said plaintiffs for themselves and on behalf of all other mobile home purchasers plus interest accrued on said illegal and usurious charges, to date of judgment.

"C. That the court grant the plaintiffs an allowance for the expenses of this action, including reasonable attorney fees and court costs.

"D. That an injunctive order issue out of this court permanently restraining and enjoining defendants, their agents, servants and employees from entering into any written agreement or receiving assignment of any written agreements proving [sic] for finance charges at an interest rate in excess of 7% on the purchase or financing of the purchase of a mobile home.

"E. That the plaintiffs have such other and further relief in the premises as shall be agreeable to equity and good conscience."

On April 21, 1972, the Attorney General intervened as a plaintiff on behalf of the people of the State of Michigan. Defendant financing institutions answered and moved for summary judgment

dismissing plaintiffs' complaint, arguing that plaintiffs had failed to state a cause of action upon which relief could be granted in that plaintiffs had no right to recover interest already paid, that plaintiffs were not entitled to equitable relief in that they failed to do equity and that there was no authority for the injunctive relief requested. Defendant credit union also moved for summary judgment on the basis that MCLA 490.14; MSA 23.494 specifically authorized credit unions to charge up to 1% per month, that the loan in question was within that statutory limit, and, therefore, the interest limitation found in MCLA 438.31, *supra,* had no application. Plaintiffs consented to entry of summary judgment in favor of defendant credit union on that basis and judgment of dismissal as to that defendant was so entered.

During the pendency of the action in the circuit court, and prior to that court's decision on defendant banks' motions for summary judgment, 1972 PA 191 was enacted into law and became effective June 21, 1972. 1972 PA 191 changed certain language in MCLA 445.852(c); MSA 19.416(102)(c) which clearly brought the retail sale of mobile homes within the provisions of the Retail Installment Sales Act, MCLA 445.851 *et seq.;* MSA 19.416(101) *et seq.* Since the finance charge provisions of the sales contracts at bar were within the statutory limits of the Retail Installment Sales Act,[1] defendants argued that 1972 PA 191 was

[1] It would appear that defendant financial institutions and the dealers who sold the mobile homes presumed that these sales of mobile homes were sales within the scope of the Retail Installment Sales Act. Accordingly, the finance charges were set in compliance with the provisions of that act. Plaintiffs do not allege that these contracts would be usurious under the provisions of the Retail Installment Sales Act. The problem arose when the Attorney General determined that mobile homes were trailers and therefore motor vehicles within the meaning of MCLA 445.852(c); MSA 19.416(102)(c). Being motor vehicles, the Attorney General determined that mobile

remedial in nature and therefore should be given retroactive effect. The trial court thereafter rendered an opinion in which he found that 1972 PA 191 should be given retroactive effect and therefore these sales contracts were controlled by the Retail Installment Sales Act and thus were not subject to the general usury statute, MCLA 438.31 *supra*. The court further held that usury can only be asserted as a defense and that the language of MCLA 438.31c(8); MSA 19.15(1c)(8) relating to injunctive relief applied only to transactions defined in MCLA 438.31c; MSA 19.15(1c). The circuit court thereafter entered summary judgment in favor of defendants. From that judgment of dismissal plaintiffs and intervening plaintiff appeal.

## I

Assuming *arguendo* for the present that these sales are not governed by the provisions of the Retail Installment Sales Act and thus not thereby excluded from the general usury law,[2] nor otherwise excluded from the provisions of the general usury law,[3] the question remains whether plaintiffs have stated any claim upon which relief can be granted. While MCLA 438.31, *supra* sets forth the lawful rate of interest and defines those areas to which the general usury statute applies, it is MCLA 438.32; MSA 19.15(2) that sets forth the

home sales were not subject to the provision of the Retail Installment Sales Act, but were, rather, subject to the provisions of the general usury statute. See OAG, 1971, No 4729, p 57 (June 21, 1971).

[2] MCLA 438.31; MSA 19.15(1) provides, in part:

"This act shall not apply to the rate of interest on any note, bond or other evidence of indebtedness issued by any corporation, association or person, the issue and rate of interest of which * * * is regulated by any other law of this state * * * ."

[3] MCLA 438.31; MSA 19.15(1) further provides, in part:

" * * * nor shall [this act] apply to any time price differential which may be charged upon sales of goods or services on credit."

penal provision incurred by a violation of the interest limit set forth in MCLA 438.31, *supra.*

MCLA 438.32, *supra,* provides:

"Any seller or lender or his assigns who enters into any contract or agreement which does not comply with the provisions of this act or charges interest in excess of that allowed by this act is barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs and the borrower or buyer shall be entitled to recover his attorney fees and court costs from the seller, lender or assigns."

In order to understand the nature and effect of this section, it is necessary to look at it in its historical prospective. From 1891 until the present language was adopted by 1966 PA 326, the enforcement provision of the general usury law was 1891 PA 156, § 2, which provided:

"No bond, bill, note, contract or assurance, made or given for or upon a consideration or contract, whereby or whereon a greater rate of interest has been, directly or indirectly, reserved, taken or received, than is allowed by law, shall be thereby rendered void; but in any action brought by any person on such usurious contract or assurance, except as is provided in the following section, if it shall appear that a greater rate of interest has been, directly or indirectly, reserved, taken or received, than is allowed by law, the defendant shall not be compelled to pay any interest thereon."

Under the 1891 statute it was held that one could not maintain an independent suit to recover interest paid on a usurious contract; however, once enforcement of the usurious contract was sought, the borrower could avail himself of the statute and seek to have all of the interest previously paid

applied against any outstanding principal.[4] It was also generally held that while there was no general equitable power to enjoin the lender's attempt to enforce the note by foreclosure on a mortgage,[5] equity would release the borrower from a usurious contract if the borrower did equity by tendering the unpaid balance plus interest at the lawful rate.[6]

Usury was treated as a statutory defense which could only be used as a shield but not as a sword.[7] Since it was a defense, it could be waived by voluntary payment of usurious interest.[8] The penal provision of forfeiture of interest was attached only upon an attempt by the seller, lender or assigns to seek enforcement of the note, bill, etc., by way of a suit upon said note, bill, etc., or by way of foreclosure upon any secured property.[9] Once enforcement was sought and the penal provisions were invoked, all interest paid was treated as payment against any unpaid principal. Even if enforcement of the contract, bill, note, etc. was sought by the seller, lender or assigns, the borrower would not be able to recover the interest already paid if that amount exceeded the unpaid principal, the rationale being that the excess was voluntarily paid and thus the defense of usury was

---

[4] *McKenna v Wilson,* 280 Mich 227; 273 NW 457 (1937); *Gladwin State Bank v Dow,* 212 Mich 521; 180 NW 601 (1920).

[5] *Vandervelde v Wilson,* 176 Mich 185; 142 NW 553 (1913).

[6] *Hogan v Hester Investment Co,* 257 Mich 627; 241 NW 881 (1932); *People, ex rel Attorney General v Detroit Mortgage Corp,* 239 Mich 495; 214 NW 430 (1927); *Gladwin State Bank v Dow, supra; Vandervelde v Wilson, supra.*

[7] *Gladwin State Bank v Dow, supra.*

[8] *Wright v First National Bank of Monroe,* 297 Mich 315; 297 NW 505 (1941); *Union Guardian Trust Co v Crawford,* 270 Mich 207; 258 NW 248 (1935); *Hogan v Hester Investment Co, supra.*

[9] *McKenna v Wilson, supra; Gladwin State Bank v Dow, supra; Leach v Dolese,* 186 Mich 695; 153 NW 47 (1915); *Vandervelde v Wilson, supra.*

waived as to that amount. Thus there was never the right to recover interest that had been paid; and the right to have whatever interest which had been paid credited against the principal was dependent upon the lender seeking enforcement of the usurious note, bill, contract, etc.

Likewise, since usury was a defense, the borrower could not seek injunctive relief. The borrower had to either wait until enforcement was sought by the lender or seek to have the usurious instrument set aside in equity. Obviously, in order to seek equitable avoidance of the usurious contract, the borrower was required to do equity by tendering the unpaid balance due plus interest at the legal rate. The rationale of such a requirement is, of course, that one who seeks to avoid the provisions of the written instrument must stand ready to discharge the implied obligation of repayment of the sum borrowed plus the lawful rate of interest. The borrower must first offer to place the lender back in his original position by tendering repayment of the principal and compensate the lender for the use of the funds by a tender of interest at the legal rate before the borrower can stir the conscience of a court of equity to release him from the written instrument.

As noted above, 1966 PA 326 changed the language of the enforcement section of the general usury law. Plaintiffs herein argue that the language changes made by the 1966 revision evidence a legislative intent to now empower borrowers to bring an independent action to recover interest paid on usurious contracts. It will suffice to say that we find nothing in the 1966 language which compels that conclusion. Indeed, since it must be presumed that the Legislature was aware of the construction given the 1891 statute, we hold that

the lack of any clear statement by the Legislature to the effect that recovery of interest could now be had in an independent suit by borrowers is indicative of the fact that the Legislature intended no change from the prior procedure. Certainly we cannot presume such a change from the mere fact that the 1966 revision used the term "borrower or buyer" in place of the 1891 term "defendant". A reading of both statutes, rather, reveals that in both cases the focus is upon barring recovery to the lender and penalizing the lender who attempts to enforce a usurious contract.

Plaintiffs also argue that the Legislature by its enactment of 1971 PA 228, which amended 1969 PA 305, which in turn amended 1966 PA 326, adding subsection 8 to section 1c, MCLA 438.31c(8); MSA 19.15(1c)(8), evidenced an intent to allow borrowers to bring independent actions to recover interest paid, where said interest was in violation of the general usury statute. MCLA 438.31c(8), *supra,* provides:

"Any party to a transaction subject to this act shall be entitled to have his rights under the provisions of this act enforced or protected by injunctive order of a court."

Contrary to the determination of the trial court, we find this provision applies to any rights which a party might have to any provision of 1966 PA 326, as amended, rather than applying only to the provisions of MCLA 438.31c *supra.*

While MCLA 438.31c(8), *supra,* applies to violations of the equal provisions found in MCLA 438.31, *supra,* it cannot be said that the language of that subsection supports the plaintiffs' conclusion that the Legislature was thereby evidencing an intent that borrowers may now bring an inde-

pendent action to recover interest paid under a usurious contract. By its very language, the relief spoken of is injunctive relief. Certainly it would be a perverse reading of the phrase "enforced or protected by injunctive order" to say that the Legislature thereby intended that borrowers should be able to recover in an independent action interest paid on a usurious contract. If the Legislature had intended to allow such a recovery on equitable grounds, it would seem that they would have used the term "equitable relief" rather than the term "injunctive order".

It would appear that the Legislature in enacting subsection (8) intended to provide a means by which borrowers could restrain lenders from undertaking enforcement of a usurious contract or loan by foreclosure of a mortgage or land contract or seizure of goods pursuant to a security agreement. In this manner the borrower would no longer have to sit by helplessly waiting for actual foreclosure or seizure of the goods to have the question of whether the contract is usurious litigated. We do hold, however, that the remedy is limited to an injunctive order restraining enforcement of the usurious contract, loan, note, mortgage, etc.

We therefore hold under 1966 PA 326, as amended, the same being MCLA 438.31 *et seq.;* MSA 19.15(1) *et seq.,* that: (1) there is no right to repayment of usurious interest which has been paid by means of an independent action brought by the borrower, usury being in the nature of a defense, and as such the penal provisions are invoked by the lender or his assigns bringing an action to enforce the note or contract; (2) one seeking the equitable relief of avoidance of a usurious contract must first do equity by tendering the

unpaid balance owing plus interest at the legal rate; and (3) the injunctive relief provided by the statute does not create any right other than the right to an injunctive order restraining the lender or his assigns from taking enforcement measures against the borrower.

Given this construction of the contract, it is necessary to now look to the relief prayed for by plaintiffs.

Paragraph A of their prayer for relief relates only to disclosure of the names and addresses of the potential member of the class covered by the class action and thus need not concern us here since such a demand is relevant only if they have otherwise stated a claim upon which relief can be granted.

Paragraph B of their prayer for relief seeks an accounting and refund of all interest charges, finance charges and fees collected. Since plaintiffs cannot recover interest already paid by means of an independent action, they have not requested relief which can be granted. It also follows that, since plaintiffs cannot bring an independent action for usurious interest that has been paid and the penal provisions of the statute are only invoked by the lender or his assigns seeking enforcement of the usurious contract, plaintiffs are not entitled to expenses, costs and attorney fees as requested in paragraph C of their prayer for relief.

As to paragraph D of their prayer for relief, it should be noted that plaintiffs are not requesting that defendants be enjoined from undertaking enforcement against plaintiffs as is authorized by MCLA 438.31c(8), *supra,* but rather they are seeking an injunctive order restraining defendants from entering into written agreements or receiving agreements involving the sale of mobile homes

where the finance charges exceed 7% interest per annum. Clearly the statute does not authorize this type of injunctive order, since the statute speaks of the rights of a party to a transaction subject to the act enforcing or protecting his right by an injunctive order. Plaintiffs are not requesting that their rights be enforced or protected but are rather attempting to restrain defendants with respect to their dealings with an inchoate class of persons who may in the future deal with defendants. Further, it is questionable whether the trial court could enjoin defendants from entering into usurious contracts in the future, since those persons who might enter into such contracts could, if they so desired, waive the defense of usury by voluntary payment. We have found no authority, either statutory or otherwise, which would support the relief requested with respect to the general usury statute.

As to paragraph E of their prayer for relief, it has already been noted that to invoke equitable relief plaintiffs must first offer to do equity by tendering the unpaid balance plus interest at the legal rate. This they have not done. Accordingly, they have sought relief which cannot be granted.

It is clear that even assuming that these contracts are controlled by the provisions of MCLA 438.31 *et seq., supra,* plaintiffs have failed to state a claim upon which relief can be granted. It follows that the trial court properly dismissed plaintiffs' complaint and granted summary judgment in favor of defendants.

II

In light of the holding above, it becomes unnecessary to decide whether the amendment to the Retail Installment Sales Act should be given retro-

active effect. Neither do we decide the question of whether a mobile home which is not self-propelled fell within the meaning of the motor vehicle exclusion contained in MCLA 445.852(c), *supra,* prior to its amendment by 1972 PA 191.[10]

While we find it unnecessary to decide the question of whether the amendatory language of 1972 PA 191 should be given retroactive application to the suit at bar which was commenced prior to the enactment of that act, we feel constrained to add that the right to now bring the action has been extinguished. The defense of usury under the general usury statute, MCLA 438.31 *et seq., supra,* would be available only if the transaction was not subject to the provisions of some other statute. Since the amendatory language of 1972 PA 191 clearly brings the retail sales of mobile homes within the scope of the Retail Installment Sales Act, even if the defense of usury under MCLA 438.31 *et seq., supra,* was available prior to the enactment of 1972 PA 191, once 1972 PA 191 became effective that right as to all future cases was extinguished. As to the question of whether plaintiffs have a vested right to assert the defense of usury provided by MCLA 438.31 *et seq., supra,* in a new action, we quote from *Lahti v Fosterling,* 357 Mich 578, 588–589; 99 NW2d 490, 495 (1959):

"The question of determining what is a vested right has always been a source of much difficulty to all courts. The right which defendants claim sprang from the kindness and grace of the legislature. It is the

---

[10] Since MCLA 445.852(c), *supra,* prior to its amendment by 1972 PA 191, defined a motor vehicle for the purpose of the Retail Install-ment Sales Act as "any self-propelled device * * * drawn upon a public highway, including * * * all trailers", it could be well argued that in order to be a motor vehicle within the meaning of the statute the trailer must be self-propelled. In other words, only self-propelled trailers would be motor vehicles which would be thereby excluded from the definition of "goods" as used by that act.

general rule that that which the legislature gives, it may take away. A statutory defense, or a statutory right, though a valuable right, is not a vested right, and the holder thereof may be deprived of it."

Whatever rights plaintiffs may have had under MCLA 438.31 *et seq., supra,* had they prayed for relief which could be granted, were extinguished by the amendment to the Retail Installment Sales Act which clearly brought retail mobile home sales within the scope of that act. Their usury defense, if any, must now be gauged by the provisions of the Retail Installment Sales Act, not with the provisions of MCLA 438.31 *et seq., supra.*

Affirmed. No costs, a public question.

All concurred.