OSINSKI v YOWELL

Docket No. 64371. Submitted June 16, 1983, at Lansing.—Decided
June 18, 1984.

Gordon Yowell and Anne M. Yowell purchased a vending ma-
chine route from Edward Osinski and June Osinski. The Yo-
wells executed a promissory note and security agreement in the
amount of $40,000 bearing interest at 8% per annum and
payable at the rate of $500 per month. The necessary docu-
ments were drafted by Gordon Yowell, a licensed real estate
broker, who told Mr. Osinski that the going interest rate was 8-
1/2%. 8% was the interest rate agreed to be applied to the
promissory note. The Osinskis filed suit against the Yowells in
Lapeer Circuit Court approximately four years later seeking a
declaration that the defendants were in default and demanding
immediate payment of the unpaid balance. They also sought a
judicial sale of the secured property and a judgment for any
deficiency. Defendants answered by asserting that the interest
rate on the promissory note was usurious. Following a bench
trial, the court, Martin E. Clements, J., entered a judgment in
favor of plaintiffs for $14,230 on the promissory note and held
that defendants were estopped from asserting the defense of
usury and that the interest rate on all future payments would
be at 7% per annum. Furthermore, defendants were to pay
12% interest on the judgment, which was immediately due and
owing, until the judgment was fully satisfied. Defendants ap-
peal, contending that the trial court improperly rejected their
affirmative defense of usury. *Held:*

1. The trial court erred in holding that defendants could not
raise the defense of usury and in allowing plaintiffs to keep the
8% interest paid through March, 1980, and to receive 7%
interest on all future payments. Defendants are entitled to
apply all of the interest they have paid on the loan to the
remaining principal debt, in accordance with the statutory

REFERENCES FOR POINTS IN HEADNOTES
[1] 45 Am Jur 2d, Interest and Usury § 255 *et seq.*
77 Am Jur 2d, Vendor and Purchaser § 310 *et seq.*
[2] 45 Am Jur 2d, Interest and Usury §§ 73, 74.

provision setting forth the penalty for violation of the usury statute.

2. Plaintiffs shall collect 12% interest on the judgment calculated from the date their complaint was filed until such time as the judgment is satisfied.

3. Defendants are awarded reasonable attorney fees and costs, but only as to matters pertaining to their assertion of the usury defense.

Reversed and remanded.

1. USURY — VENDOR AND PURCHASER — INTEREST — ATTORNEY FEES
  — COURT COSTS.
   A purchaser who enters into a contract which provides for a usurious rate of interest can avail himself of the usury statute if the seller seeks to enforce the contract and can have all of the interest previously paid applied against any outstanding principal debt and can recover his attorney fees and court costs from the seller; if, however, the purchaser has voluntarily satisfied the entire obligation, or at least an amount over the principal amount, the seller is entitled to retain the usurious interest paid, the rationale being that since the purchaser voluntarily paid the excess amount, he has waived his usury defense as to that amount (MCL 438.32; MSA 19.15[2]).

2. INTEREST — JUDGMENT INTEREST.
   Judgment interest is provided for by statute, is mandatory, and is designed to compensate a party for its loss of use of its funds (MCL 600.6013; MSA 27A.6013).

*Duckwall, Nowak, Connolly & Poniatowski-Morgan* (by *Earl H. Morgan, Jr.),* for plaintiffs.

*Robert W. Thomas,* for defendants.

Before: M. J. KELLY, P.J., and SHEPHERD and R. I. COOPER,* JJ.

R. I. COOPER, J. Defendants and plaintiffs entered into an agreement whereby the defendants purchased the plaintiffs' vending machine route. The defendants executed a promissory note and security agreement in favor of plaintiffs in the

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

amount of $40,000, bearing interest at the rate of 8% per annum and payable at the rate of $500 per month. The negotiations commenced around Christmas of 1976 and continued through April 1, 1977, at which time the closing occurred and the documents were executed. The documents were drafted by defendant Gordon Yowell, who was a licensed real estate broker. When asked by plaintiff Edward Osinski what the going rate of interest was, Mr. Yowell replied that the going rate was 8-1/2%. Mr. Osinski indicated he would be willing to accept 8% interest on the promissory note.

Plaintiffs filed suit on February 4, 1981, seeking a declaration that defendants were in default and demanding immediate payment of the unpaid balance. Further, plaintiffs sought a judicial sale of the secured property and a judgment for any deficiency. In their answer, defendants asserted that the interest rate on the promissory note was usurious contrary to MCL 438.31; MSA 19.15(1). No claim of fraud or mistake was asserted by plaintiffs.

The trial court entered a judgment on behalf of plaintiffs for $14,230 on the promissory note, said judgment being entered May 13, 1982. The trial court ruled that defendants were estopped from asserting the defense of usury and that the interest rate on all future payments would be at 7% per annum. In addition, the trial court determined that defendants were to pay 12% interest on the judgment, which was immediately due and owing, until the judgment was fully satisfied. Neither party was awarded attorney fees or costs.

The trial court observed that the promissory note, which set interest at 8%, would be an apparent violation of the usury statute in Michigan in that under the circumstances of the case interest

would be limited to no more than 7%. Further, the trial court observed that Mr. Yowell admitted he had been a real estate salesman and real estate broker who had a degree of familiarity with sales and legal documents far beyond that of the plaintiffs. The trial court found that Mr. Yowell prepared the documents and that Mr. Osinski did not know anything about the usury statute. The trial court observed that it could not say that Mr. Yowell knew that the rate would constitute usury and in fact suspected Mr. Yowell did not know it would constitute usury. However, the trial court found that when a person has superior or apparent knowledge and prepares the legal documents and either knows or should know that a contract is illegal, he should be estopped from later claiming usury. Under the circumstances in this case and considering the suggestions Mr. Yowell orally made to Mr. Osinski as to the going interest rate, the trial court held that the defendants should be estopped from claiming usury.

On appeal plaintiffs cite *Green v Grant,* 134 Mich 462, 467; 96 NW 583 (1903), as follows:

> "It is the essence of an usurious transaction that there shall be an unlawful and corrupt intent on the part of the lender to take illegal interest, and so we must find before we can pronounce the transaction to be usurious." Quoting *Condit v Baldwin,* 21 NY 219, 221 (1860).

Plaintiffs apply *Green* in the sense that defendants had superior knowledge and that there was no showing whatsoever that plaintiffs intended to take illegal interest from the defendants.

The *Green* case, which relies on New York law, is cited thereafter in various Michigan cases. The *Green* case involved a situation where the rate of

interest set in the mortgage was within the statutory limit. However the mortgage agreement also required payment of all taxes by the mortgagor. The aggregate of taxes and interest exceeded the legal limit by 3/4 of 1%. The *Green* Court thus found that a contract is not usurious per se because the aggregate of interest reserved and taxes paid exceeds the maximum allowed by statute. The *Green* Court thus barred the defense of usury on the grounds that it was not established that the lender knew that the aggregate amount would exceed the statutory limit.

As stated in *Green,* the Court was sympathetic to the concept of estoppel, even though not referred to as such, by stating that an unlawful or corrupt intent was the essence of an usurious transaction. However a series of cases decided after *Green* significantly limited the trial court's ability to apply equitable concepts. For example, the case of *Houghteling v Gogebic Lumber Co,* 165 Mich 498; 131 NW 109 (1911), dealt with a transaction whereby the defendant issued bonds at a 10% discount to the plaintiffs. The defendant executed a mortgage in favor of the plaintiffs to secure the amount of money received from the plaintiffs. The *Houghteling* Court found that the transaction was a loan and not a sale, thus determining the 10% discount was in fact a rate of interest in excess of the statutory limit and was thus usurious. The *Houghteling* Court observed that the parties had negotiated as business persons familiar with business matters. However, the following quoted language contains the controlling law that was applied:

"If there was a mistake of law, that, it is conceded, would be no excuse. * * * [T]he clear legal effect of a contract makes unimportant the intent with which it

was made, when it is sought to enforce it according to its terms. We were not inattentive at the hearing, and we have not been at chambers, to the argument that modern business methods and business convenience may be judicially taken notice of, and that courts, in considering such questions as the one presented upon this record, should declare valid contracts which conform with, and are but expressions of, business necessities and convenience, when it is apparent that no actual wrong or oppression was intended, and where, from the business standpoint, none has resulted. The Legislature has declared contracts, such as the one in question, usurious. The courts may not disregard the statute, invoked as it is by a party to the contract. It is the Legislature alone which has power to amend the law.' 165 Mich 503.

The *Houghteling* case was soon followed by *Union Trust Co v Radford,* 176 Mich 50; 141 NW 1091 (1912), which, like *Green,* involved a mortgage which set a legal rate of interest but also included a requirement for payment of taxes based on the capital stock of a corporation. The *Union Trust* Court observed that the mortgaged land constituted a part of the capital stock and that, if it were not for the mortgage, there would not have been a tax on the capital stock. The *Union Trust* Court held as follows when it found the mortgage to be usurious:

"[T]he question of intent is to be considered in determining whether or not a contract is usurious; but where, as in this case, the contract is unambiguous and its legal meaning clear, the parties must be deemed to have intended the result expressed by the contract." 176 Mich 58.

The *Union Trust* case was followed by *Sickles v Schaen,* 202 Mich 327; 168 NW 454 (1918), in which the mortgage agreement was set at 7%,

which was the maximum amount allowed at that time. However, in addition, the mortgagor was required to pay any taxes assessed on the mortgage. The *Sickles* Court cited *Green, supra,* to the effect that there must be an unlawful and corrupt intent to invoke usury, but that such intent may be inferred as follows:

"If, at the time the contract was made, he knew that the aggregate of interest reserved and taxes to be paid would exceed the statutory rate,—as he would if the interest reserved was the maximum interest,—the contract is usurious." 202 Mich 331.

The above cited post-*Green* cases all found that there was a lack of evidence that the lenders intended to engage in usury, but that the agreements were usurious.

The case of *Union Guardian Trust Co v Crawford,* 270 Mich 207; 258 NW 248 (1935), provides a limited analogy regarding the concept of estoppel. In the *Crawford* case the defendant borrowed a sum of money from the plaintiff and secured the same by a mortgage on land owned by the defendant. Again we have a situation where the interest charged was the highest rate legally allowed but was also accompanied by a requirement that the mortgagor pay taxes. Thus the mortgage arrangement was found to be usurious. However, the plaintiff argued that the mortgage was prepared by the defendant and, as such, the defendant should not be allowed to raise the defense of usury. The *Crawford* Court, in addressing the issue, did not specifically state that the concept of estoppel could not be raised. Instead it found that the plaintiff was a known financial institution and thus must be presumed to know the law of usury. Thus it was not allowed to successfully assert a

claim of estoppel. By inference, the question of whether the issue of estoppel could be applied where a lender was not sophisticated enough to know the law of usury remained unanswered. However, the case of *Bebee v Grettenberger,* 82 Mich App 416; 266 NW2d 829 (1978), lays that issue to rest. In the *Bebee* case the plaintiff husband was a realtor who bought defendants' inherited farmland under a land contract at 8%. Later the plaintiffs obtained a deed from the defendants so plaintiffs could obtain a first mortgage from a bank to obtain money to develop the property. The plaintiffs gave the defendant vendors, in return for the deed, a second mortgage on plaintiffs' home, also at 8% with the same monthly payment amount and the same balance due as that set in the cancelled land contract. The usury statute allows only 7% interest on a second mortgage. The plaintiffs defaulted and defendants foreclosed by advertisement on the second mortgage. The plaintiffs filed a suit to rescind and secured an ex parte injunction on the foreclosure. The defendants filed a motion for summary judgment, which was granted, and the injunction against foreclosure was dissolved. The trial court said it would be absurd to allow the plaintiffs to request the change from a land contract to a mortgage and then, when the request is granted, to use it to avoid payment. The *Bebee* Court found that the mortgage was substantially different from the land contract in that the pay-off date was one year later, that redemption rights are different under a mortgage, that the realty secured by the mortgage was not the same as that involved in the land contract and that the mortgage was thus not an "alter ego" of the land contract, and that the 8% rate on the second mortgage on plaintiffs' home was thus usurious. The *Bebee* Court concluded

that the legislative intent was violated, even though it was done unintentionally and despite the fact that equities were in defendants' favor and despite the fact that the defendants were blameless. The *Bebee* case provides a direct analogy to our present case in that one of our present purchasers also was a realtor and no intent to violate the usury statute was found by the trial court. Thus the *Bebee* Court also addressed a matter involving an allegation of superior knowledge and equitable estoppel by stating that legislative intent was nevertheless violated and such violation results in the imposition of the consequences set by statute. The penalties for violation of the usury statute are set forth in MCL 438.32; MSA 19.15(2):

"Any seller or lender or his assigns who enters into any contract or agreement which does not comply with the provisions of this act or charges interest in excess of that allowed by this act is barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs and the borrower or buyer shall be entitled to recover his attorney fees and court costs from the seller, lender or assigns."

Where a lender/seller seeks to enforce a usurious contract, the borrower/buyer can avail himself of the statute and have all of the interest he previously paid applied against any outstanding principal debt. *Waldorf v Zinberg,* 106 Mich App 159, 164; 307 NW2d 749 (1981), citing *Michigan Mobile Homeowners Ass'n v Bank of the Commonwealth,* 56 Mich App 206, 212-213, 216; 223 NW2d 725 (1974). See also *McKenna v Wilson,* 280 Mich 227, 231-232; 273 NW 457 (1937). If the borrower/buyer has voluntarily satisfied the entire obligation, or at least an amount over the principal amount, the

lender/seller is entitled to retain the usurious interest paid. *Waldorf, supra,* p 165; *Michigan Mobile, supra,* p 213. The rationale is that since the borrower/buyer voluntarily paid the excess amount, he has waived his usury defense as to that amount. *Michigan Mobile, supra,* pp 213-214.

Based on the above cases, the trial court erred in allowing plaintiffs to keep the 8% interest paid through March, 1980, and to receive 7% interest on all future payments. We recognize the trial court's attempt to be fair and equitable. However, this is not an equity case. This case involves interpretation of the usury statute and the underlying legislative intent behind it. Although the Legislature has provided a number of exceptions to the usury statute, it has not modified or amended its language to allow the relief sought by plaintiffs. Defendants are entitled to apply all of the interest they have paid on the loan to the remaining principal debt. Plaintiffs shall collect 12% interest on the judgment, calculated from February 4, 1981, which is the date that the complaint was filed, and which shall continue until the judgment is satisfied. MCL 600.6013(4); MSA 27A.6013(4). Judgment interest is statutory and mandatory and is designed to compensate a party for its loss of use of its funds. *Militzer v Kal-Die Casting Corp,* 41 Mich App 492, 496-497; 200 NW2d 323, *lv den* 388 Mich 789 (1972).

Based on MCL 438.32; MSA 19.15(2), the buyer is entitled to recover its fees and costs from the seller. Further, the defendants are awarded reasonable attorney fees and costs from plaintiffs, but only as to matters pertaining to their assertion of the usury defense.

Reversed and remanded for determination consistent with the opinion.