*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROGER G. ROSS, as Independent Trustee and
Family Trustee of THE RUTHIE E. ROSS
REVOCABLE LIVING TRUST DATED
OCTOBER 26, 1983, as amended,

UNPUBLISHED
May 26, 2022

Plaintiff/Counter-Defendant-Appellee,

v

No. 357597
Macomb Circuit Court
LC No. 20-000782-CH

DANIEL A. PEYERK, Trustee of the DANIEL A.
PEYERK LIVING TRUST DATED 12/30/1980,

Defendant/Counter-Plaintiff-
Appellant.

Before: SWARTZLE, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

The criminal usury statute, MCL 438.41, prohibits (with limited exceptions) charging, taking, or receiving interest at a rate above 25% per year. Because the Peyerk Trust charged and attempted to collect interest and "missed payment" fees from the Ross Trust that resulted in an effective interest rate above 25% per year, we conclude that the trial court did not err in finding that MCL 438.32 barred the Peyerk Trust from recovering any interest or missed payment fees and could only foreclose on the remaining principal balance of the mortgage note.

## I. BACKGROUND

The Ross Trust owns four adjoining parcels of property in Bruce Township, Michigan. On or about May 29, 2008, the Ross Trust borrowed $650,000.00 from the Peyerk Trust and granted the Peyerk Trust a mortgage on the Bruce Township property ("Note"). The mortgage note stated, in pertinent part, that interest would be charged on the unpaid principal at a yearly rate of 12% until the full amount of the principal has been paid, that annual payments of $95,435.76 would begin on May 29, 2009, and that the "maturity date" was May 29, 2013. The mortgage note included the following handwritten penalty provisions that the parties agreed to:

\*\*Interest rate will change each year that annual payment not paid. Interest rate will increase to reflect change from prime rate as of closing. Minimum interest increase will be 1%, even if prime increases less than 1%

\*\*\* If annual payment not paid, payment will be added to the principal balance (including any unpaid interest) and any interest will accrue on the new balance.

The Ross Trust made its first payment of $95,435.84 in June 2009. The Ross Trust did not make the May 2010 payment. The Ross Trust made a second payment in January 2012 in the amount of $135,586.39. In May 2013, the Peyerk Trust sent a notice of default asserting that $878,217.48 was due and owing. The calculations in the notice of default reflected that the 12% interest rate escalated to 13% in May 2010 and 14% in May 2011.

The Ross Trust did not make any further payments on the mortgage note. In February 2020, the Ross Trust commenced this action against the Peyerk Trust to quiet title.[1] The Ross Trust alleged that the trustee at the time of the transaction did not have the authority to encumber the subject property, that the Peyerk Trust knew or should have known that the trustee lacked authority, and that the Peyerk Trust was not dealing in good faith when it encumbered the property. In lieu of an answer, the Peyerk Trust filed a motion for summary disposition pursuant to MCR 2.116(C)(8). The Peyerk Trust also filed a counter-complaint asserting claims for judicial foreclosure and breach of the mortgage note. Notably, the Peyerk Trust alleged that $3,023,932.87 was owed based on the following calculations:

| | |
|---|---|
| (A) Principal Amount of Mortgage Note | $650,000.00 |
| Plus: 12 % Interest from 5-29-08 to 6-30-09 | $85,658.96 |
| (B) Balance Due as of June 30, 2009: | $735,658.96 |
| Less: Payment on 6-30-09 | ($95,435.84) |
| (C) Balance Due as of July 1, 2009 | $640,223.12 |
| Plus: 12% Interest from 7-1-09 to 5-29-10 | $69,880.79 |
| (D) Balance Due as of May 29, 2010 | $710,103.91 |
| Plus: Missed Payment on 05-29-10 | $95,435.76 |
| New Principal Balance | $805,539.67 |
| Plus: 12% Interest from 5-29-10 to 5-29-11 | $96,664.76 |

---

[1] Although the mortgage note encumbered four parcels of property, the Complaint only sought to quiet title as to one of the parcels.

| | |
|---|---|
| (E) Balance Due as of May 29, 2011 | $902,204.43 |
| Plus: Missed Payment on 05-29-11 | $95,435.76 |
| New Principal Balance | $997,640.19 |
| Plus: 12% Interest from 5-29-11 to 5-29-12 | $119,716.82 |
| (F) Balance Due as of May 29, 2012 | $1,117,357.01 |
| Plus: Missed Payment on 05-29-12 | $95,435.76 |
| New Principal Balance | $1,212,792.77 |
| Plus: 12% Interest from 5-29-12 to 5-29-13 | $145,535.13 |
| (G) Balance Due as of May 29, 2013 | $1,358,327.90 |
| Plus: Missed Payment on 05-29-13 | $95,435.76 |
| New Principal Balance | $1,367,873.66 |
| Plus: 12% Interest from 5-29-13 to 5-29-20 | $1,656,059.21 |
| (H) Balance Due as of May 29, 2020 | **$3,023,932.87[2]** |

The trial court denied the motion for summary disposition and granted the Ross Trust an opportunity to amend its complaint. The Ross Trust amended its complaint to include allegations that the Peyerk Trust charged a usury interest rate and, since it was not a qualified residential mortgage lender under federal or state law, it could not charge more than 11% interest on the loan.

Following discovery, the Peyerk Trust filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no evidence of any wrongful or fraudulent conduct by the Peyerk Trust and that the business exception in MCL 438.61 permitted it to charge up to 25% interest on the mortgage note. In response, the Ross Trust admitted that the Peyerk Trust was entitled to foreclosure, but maintained that the redemption amount should only be the principal balance of $418,977.77 because the usurious interest rate precluded the award of any interest. The Peyerk Trust maintained that the mortgage note's 12% interest was not usurious and asserted that the Ross Trust had waived any usury defense as to payments already made.

---

[2] The Peyerk Trust's calculations in its counter-complaint failed to account for the Ross Trust's January 26, 2012 payment in the amount of $135,586.39. The Peyerk Trust acknowledged this omission at the summary disposition stage and adjusted its calculations to reflect the 2012 payment.

The trial court agreed that the business exception of MCL 438.61(3) applied, but found that the effective interest rate exceeded the maximum 25% permitted under MCL 438.41. As a result, the trial court held that the Peyerk Trust could only foreclose on the $418,977.77 principal balance pursuant to MCL 438.32.

## II. STANDARD OF REVIEW

We review a trial court's determination on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Woodring v Phoenix Ins Co,* 325 Mich App 108, 113; 923 NW2d 607 (2018). Summary disposition under MCR 2.116(C)(10) is only appropriate when there is no genuine issue of material fact. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).

## III. ANALYSIS

The Peyerk Trust argues that the trial court erred in finding that the effective interest rate was usurious and maintains that the Ross Trust waived the usury defense as to payments that it made. We disagree.

The parties do not dispute the trial court's finding that the mortgage note fell under MCL 438.61(3), which is one of the business entity exceptions to the civil[3] and criminal usury statutes.[4] This exception permits lenders such as the Peyerk Trust[5] to charge a business entity an interest rate in excess of the civil usury statutes, but it may not exceed the criminal usury statute's limit of 25% simple interest per year. MCL 438.61(3). Thus, the only question is whether the Peyerk Trust charged the Ross Trust an interest rate that violated the criminal usury statute.

This question can be resolved with basic math. The Peyerk Trust contends that the balance due on the $650,000.00 mortgage note as of May 29, 2020 is $2,871,628.24. Assuming for the

---

[3] The applicable civil usury statute prohibits a mortgage loan with an interest rate that exceeds 11% per year if the lender or vendor is not an approved mortgagee under the national housing act. MCL 438.31c(6). The Peyerk Trust concedes that it is not an approved mortgagee under the national housing act.

[4] The criminal usury statute precludes a person from knowingly charging, taking or receiving any money or other property as interest on a loan "at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer or shorter period." MCL 438.41.

[5] MCL 438.61(2) authorizes a limited class of lenders to enter into a loan agreement with a business entity at any rate of interest, notwithstanding the civil and criminal usury statutes. The Peyerk Trust concedes that it does not fall within the limited class of lenders identified in MCL 438.61(2).

sake of simplicity that no payments were made in the 12-year period between the May 29, 2008 inception date of the loan and May 29, 2020, 25% simple interest per year would equate to $1,950,000.00,[6] which would be the maximum amount of interest allowable under MCL 438.41. Thus, the maximum total amount due would be $2,600,000.00 for a $650,000.00 loan with 25% simple interest per year. Clearly, the $2,871,628.24 that the Peyerk Trust claims is due exceeds $2,600,000.00. In fact, the amount that the Peyerk Trust claims is due equates to a 28.48% simple interest rate per year[7] if one were to assume that no payments were made during the 12-year period.

The Peyerk Trust maintains that the mortgage note is not usurious because the annual rate of 12% interest rate is well below the threshold for criminal usury. This argument ignores the contractual provision for "missed payment" fees wherein each $95,435.76 missed annual payment and all unpaid interest was to be added to the principal balance and interest would accumulate on the new balance (i.e., compounded interest). Our Supreme Court has defined interest as "a charge for the loan or forbearance of money, or a sum paid for the use of money, or for the delay in payment of money." *Town & Country Dodge, Inc v Dep't of Treasury*, 420 Mich 226, 242; 362 NW2d 618 (1984) (quotation marks and citations omitted). Applying this definition, this Court recently held that contractual fees can be considered interest for purposes of the criminal usury statute. *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, __ Mich App __; __ NW2d ___ (2021) (Docket Nos. 349909 and 350159), slip op at 10, oral argument gtd on the application 970 NW2d 676 (2022).

The parties in *Soaring Pine Capital Real Estate* agreed to a mortgage note that stated that interest would accrue on the outstanding principal amount at the rate of 20% per annum. The note also required the defendant to pay a "commitment fee." The trial court concluded that the mortgage note violated MCL 438.41 because it charged an effective interest rate above 25% simple interest per annum. This Court affirmed, holding that the "commitment fee" was actually interest that brought the total effective rate of the loan above 25% when it was added to the annual rate of interest stated in the mortgage note.[8] *Id.* slip op at 10-11.

We reach a similar conclusion here. Each missed payment fee of $95,435.76 was "a charge for the loan or forbearance of money, or a sum paid for the use of money, or for the delay in payment of money." *Town & Country Dodge,* 420 Mich at 242. Consequently, the $95,435.76 fees were actually interest. These fees were added to the loan balance each year from 2010 to 2013, which equated to a rate of 14.68% simple interest per annum.[9] When this hidden interest is added

---

[6] $650,000.00 principal x 25% = $162,500.00 annual interest
  $162,500.00 interest x 12 years = $1,950,000.00 total interest

[7] $2,871,628.24 owed - $650,000.00 principal = $2,221,628.24 total interest
  $2,221,628.24 / ($650,000.00 x 12 years) = 0.28482413
  0.28482413 x 100 = 28.4824% per year

[8] This Court held that the annual interest rate was actually slightly higher than 20% because the note used 360 days as the length of a year. *Id.* slip op at 11.

[9] $95,435.76 / $650,000.00 = 0.146824
  0.146824 x 100 = 14.6824% per year

to the 12% mortgage note interest rate per annum, the total effective rate is above 25% in violation of MCL 438.41. Accordingly, we conclude that the trial court did not err in finding that the effective interest rate of the mortgage note was usurious.

Finally, we reject the Peyerk Trust's argument that the Ross Trust waived the usury defense when it made its payments on the loan in 2009 and 2012. A lender that charges a usurious interest rate is barred from recovering "any interest, any official fees, delinquency or collection charge, attorney fees or court costs." MCL 438.32. When a lender seeks to enforce a usurious contract, the borrower is entitled to have any previously paid interest applied against the outstanding principal. *Osinski v Yowell*, 135 Mich App 279, 287-288; 354 NW2d 318 (1984). Usury is a defense that is waived if the entire obligation is voluntarily satisfied and there is no right to repayment of usurious interest by means of an independent action. *Michigan Mobile Homeowners Ass'n v Bank of the Commonwealth*, 56 Mich App 206, 216; 223 NW2d 725 (1974). The *Osinski* Court explained this waiver:

> Where a lender/seller seeks to enforce a usurious contract, the borrower/buyer can avail himself of the statute and have all of the interest he previously paid applied against any outstanding principal debt. If the borrower/buyer has voluntarily satisfied the entire obligation, or at least an amount over the principal amount, the lender/seller is entitled to retain the usurious interest paid. The rationale is that since the borrower/buyer voluntarily paid the excess amount, he has waived his usury defense as to that amount. [*Osinski*, 135 Mich App 287-288 (citations omitted).]

In this case, the Ross Trust is not claiming that it is entitled to repayment for the amounts of usurious interest that it already paid to the Peyerk Trust. Rather, in response to the Peyerk Trust's attempt to enforce the usurious mortgage note, the Ross Trust appropriately availed itself of MCL 438.32 and sought to have all of the interest that it previously paid applied against the outstanding principal debt. Since the amount of interest paid did not exceed the principal, the trial court did not err in finding that the Peyerk Trust is barred from receiving any interest or late payment fees on the mortgage note pursuant to MCL 438.32 and the payments made by the Ross Trust should be deducted from the principal balance.

## IV. CONCLUSION

We conclude that the trial court did not err in finding that the effective interest rate of the mortgage note was usurious and, therefore, the Peyerk Trust may only foreclose on a balance of $418,977.77. We affirm.

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron
/s/ Sima G. Patel

-6-